Matthias, J.
Two questions, each of which are of prime importance, arose upon the trial of *188 this case, and they are presented for our consideration. The first involves the application to the conditions disclosed by the record in this case, of the statute usually denominated “the rule of the road.”
The road upon which these automobiles were traveling when they met in collision had been improved for a considerable distance by paving with brick fourteen feet on the east side thereof. The dirt or unimproved portion of the road varied somewhat in width, being from a foot or two to possibly eight feet, and it was about this maximum width where the collision occurred.
The plaintiff was traveling north and the defendant’s automobile was being driven south. The record discloses that these cars could have passed each other on the improved portion of the road with a clearance of substantially three feet, and therefore it was entirely consistent with safety for both cars to remain on the improved roadway.
Evidence was introduced tending to prove that the automobile of the defendant was driven sufficiently to the right that in passing its right wheels were off the pavement, and therefore no part of the machine was on the east half of the paved portion of the- road. If that evidence was true, then the -automobiles met in collision at a point west of the center of the paved portion .of the road, and it would follow that plaintiff’s car was then to his left of the middle of the improved road.
The definition of “the road” therefore became quite material, if indeed it was not determinative of the whole case. The'court, after having stated to the jury that the defendant was required to *189 give plaintiff half of the road, added “ ‘the road.' means the road that is traveled by the public from gutter to gutter.”
In view of the conditions above described we are of the opinion that such instruction was erroneous and prejudicial, for persons traveling north would thus be permitted to usurp the use of eleven feet of the brick road, substantially the width of two automobiles, and leave for the southbound vehicle less than three feet of the improved road, while if each kept to the right side thereof there was ample room for both cars traveling on the improved highway to pass with perfect safety.
It must have been contemplated by the public authorities, in constructing an improvement of such width as to fully - and adequately care for traffic, that it would be unnecessary for vehicles traveling south to leave it in passing. It certainly was not constructed as a one-way road and intended for the exclusive use of those traveling north, and it is difficult to see why the south-bound traveler should be required to vacate it and turn into the dirt road. The law should not be so interpreted and applied as to lend aid and encouragement to the “road hog.” He needs none. Commendable progress has been made in the improvement of the highways of this state. Such improvements have been made, and will hereafter be constructed more rapidly than heretofore, in answer to the increasing demand for highways, solid and substantial, which may be used for all purposes the year round. They are constructed for the use of the public, all who desire to travel over them, *190 and, when -expense is incurred to build them of ample width to accommodate the traffic and permit vehicles to safely pass thereon, one should not be permitted to so use them as Jo exclude another or crowd him over on to a dirt road which is likely to be in an indifferent condition; for it would seem unnecessary that any track in addition to such improvement be maintained and kept in good condition for travel.
The other question of law arises from the fact that at the time of the collision the defendant’s automobile was being driveri by his son, Roy Flick, 23 years of age, unaccompanied by the defendant or any other member of the family. It is disclosed by the record that the son, Roy Flick, lived at his father’s home as a member of the family, and a portion of the time worked in his father’s meat market, and that although he did not have the express permission of the father to use his touring car on the particular occasion in question he had general permission to use the car when he desired. The accident occurred about 9 o’clock in the evening; the passengers with Roy Flick were a Miss Taylor, his lady friend, and a Mr. and Mrs. Strait, all of whom were riding upon his personal invitation:
The case was submitted to the jury by the trial court upon the theory that the defendant would be responsible for the act of his son, and liable for any damage resulting from his negligence, if the defendant purchased such automobile for the use of the family and permitted the son, who was a member of the family, to drive the car. In ac *191 cordance with this theory of liability of the father for the tort of the son, the -court refused- to- instruct the jury as requested, that the defendant would not be liable unless they found that Roy Flick was driving such automobile in behalf of the defendant as his personal servant or agent, or unless there had been some ratification of the act by the defendant. On the contrary the court instructed the jury as follows:
“It turns out in evidence that at the time that this car of defendant’s was being driven it was driven by his son, and therefore the. defendant insists that he is not responsible for the negligent act of the son. It is a conceded fact in the case, that the defendant himself had no hand or parcel in the driving of that car that night. ‘Ordinarily a parent is not responsible for the torts or the wrongs of the child. It is immaterial whether he is a minor or adult, the parent is not responsible for the act of the child, but I say to you, as a matter of law, that if you find from the evidence that this defendant purchased this car for the use of the family, and permitted this boy to drive the car, and he was a member of the family and permitted him to drive the car on that night, then he would be responsible for his act, if there is any-liability whatever in the case.’ ”
- It is elementary that the parent is not liable for the tort of his child, whether an adult or minor, unless he participates in the fault committed by the child. He is then liable only for his own fault and neglect and not that of the child. As stated in 1,Cooley on Torts (3 ed.), page 180:
*192 “The father is not liable, merely because of the relation, for the torts of his child, whether the same are negligent or wilfull. He is liable only on the same grounds that he would be liable for the wrong of any other person, as that he directed or ratified the act, or took the benefit of it, or that the child was at the time acting as his servant.”
It has been frequently held that an automobile is not such a dangerous machine or agency as to make applicable to it the rules requiring extra care in the use and control of instrumentalities which are dangerous per se. The following are the most recent cases applying that doctrine: Parker v. Wilson, 179 Ala., 361; Cohen v. Meador, 119 Va., 429; McFarlane v. Winters, 47 Utah, 598, and Arkin v. Page, 287 Ill., 420.
While not a dangerous instrumentality or agency in and of itself, an automobile may become such in the hands of one who by reason of his-youth, lack of skill, or want of experience, is incompetent to operate it. If injury result under such circumstances a parent may be liable therefor if he permitted the use of the automobile upon such occasion and for the purpose in which it was then employed, but such liability would not arise because of the imputation of negligence of the child to the parent, but the action would be based upon the negligence of the parent in placing in the hands of such child an instrumentality which would be dangerous in the hands of such incompetent, unskilled and inexperienced person. In the case at bar, however, we have no such question, for the evidence most favorable to the case of the plaintiff is *193 that the defendan’t son, who was 23 years of age, was experienced and competent in the management of an automobile. The record discloses that he had more than three years’ experience driving-automobiles, and that he had never had any previous accident of any sort.
The principle applicable in cases of the kind is thus stated in 29 Cyc., 1665: “The mere relation of parent and child imposes upon the parent no liability for the torts of the child committed without his knowledge or authority, express or implied ; and although where- a parent authorizes the child to act as his agent or servant in any matter, he is liable for the torts of the child committed in the course of the employment, this liability does not grow out of the relation of parent and child, but is based upon the relation of principal and agent, or master and servant, and is governed by the rules applicable to such relations.”
The mere fact of relationship as father and son therefore does not give rise to liability of the former for the acts of the latter. The principle of respondeat superior has no application- where there is no relation of master and servant or principal and agent. Had this son been a mere employe of the defendant, the latter would not have been Háble for the negligence of the former in the operation of such automobile unless at the time he was engaged upon the employer’s business and acted within the scope of his employment. White Oak Coal Co. v. Rivoux, Admx., 88 Ohio St., 18.
*194 In those cases where the parent has been held liable for the injuries inflicted by the negligent operation of an automobile, under circumstances such as appear in this case, such holding has been based upon the theory that the principle of master and servant applies and that the tort was committed by the son in the course of his employment. But the courts so holding announce the view that the son in the use of his father’s automobile, for his own pleasure, was engaged in the business of his father because he was carrying out the purpose for which the automobile was procured. The line of cases' referred to goes so far as to hold that any member of the family who is using the automobile, even if for his own individual pleasure, is thereby engaged in the business of the parent, and that such relationship is sufficient to call for the application of the rule of respondeat superior. Perhaps the leading case announcing such doctrine is that of Birch et al. v. Abercrombie et al., 74 Wash., 486, 133 Pac. Rep., 1020.
The case at bar presents no different situation than that disclosed in the case of White Oak Coal Co. v. Rivoux, Admx., supra, and the rule that where an employer loans his automobile to an adult employe, who is an experienced and competent driver, to use, not on any business of the employer but for the exclusive benefit or pleasure of the employe, the employer is not liable for the negligence of the driver, must apply here, unless the fact that the person to whom the automobile was loaned was a son of the owner gives rise to the relationship of principal and agent, and that could arise *195 in this case only on the theory that the pleasure of the son was the business of the father. Touching this proposition we desire to call attention to some recent decisions of courts of last resort, announcing and applying the principle which in our opinion should be controlling in cases of this character.
In the case of Doran v. Thomsen, 76 N. J. L., 754, the court held that in an action against the father, where his daughter, about 19 years of age, in using his automobile for her pleasure, negligently injured a person in the highway, proof of general permission of her father to use the automobile was not sufficient to constitute her the agent of her father and render him liable. The court held that it was error to make the defendant’s liability depend upon the object for which he procured the machine, the pleasure of the family, in cbnnection with the fact that his daughter operated it for that purpose, and that it was error to instruct the jury that she thereby became her father’s servant. As suggested by the court in that case the doctrine adopted by the trial court would subr ject a parent to liability if he bought for his son a base ball, or bat, or for his daughter a golf club, and permitted them to be used for their appropriate purpose, which would be their pleasure, and an injury resulted to some one from such use.
In the case of Van Blaricom, Admx., v. Dodgson, 220 N. Y., 111, the facts were substantially those of the present case. The defendant had a car for the family use, which he permitted his adult son from time to time to use for his individual ac *196 commodation, and, while so operating it, unaccompanied by any other member of the family, and pursuing solely and exclusively his own pleasure, he caused injury. There, as here, there was no claim that the son was unskilled in the management of an automobile. The court held that under such circumstances the defendant was not the principal of the son so as to be responsible for his negligent conduct under the ordinary rules of agency. In that case it was urged that the father had made it his business to furnish entertainment for the members of his family, and, therefore, when one of them was permitted to use such automobile for his sole pleasure, he was really pursuing the busines.s of the parent, and therefore was his agent. Upon that theory of parental liability, Chief Justice Hiscock, delivering the opinion of the court, says at page 114: *197 ciples or whether it would present a case of such theoretical and attenuated agency, if any, as would be beyond the recognition of sound principles of law as they are ordinarily applied to that relationship. The question largely carries on its face the answer, whichever way to be made.”
*196 “This is an advanced proposition in the law of principal and agent, and the question which it presents really resolves itself into the one whether, as a matter of common sense and practical experience, we ought to say that a parent who maintains some article for family use and occasionally permits a capable son to use it for his individual, convenience ought to be regarded as having undertaken the occupation of entertaining the latter and.' to have made him his agent in this business, although the act being done is solely for the benefit of the son. That is really about all there is to the question. Not much can be profitably said by way of amplification or in debate of the query whether such a liability would rest upon reasonable prin-
*197 It is then suggested that an affirmative answer has been made by some courts, citing Birch v. Abercrombie, supra, and Hays v. Hogan, 180 Mo. App., 237. After demonstrating that the courts in those cases apply a different rule of agency to the use of an automobile than to the use of a horse or wagon, or boat, etc., it is urged that the rules of principal and agent are constant and not variable in response to the supposed exigencies of some particular situation, and that “The question whether one person is the agent of another in respect to some transaction is to be determined by the fact that he represents and is acting for him rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent.”
It is very pertinently observed by the court:
“If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter’s own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency.”
In the case of Hays v. Hogan, 273 Mo., 1, the court of appeals was reversed by the supreme court of Missouri, which court declined to hold that an *198 adult son in pursuit of his own pleasure with an automobile, owned by the father was engaged in the business of the latter, because in theory such holding overlooks well-settled principles of law and in practice would interdict the father’s generosity and his reasonable care, for the pleasure or even well-being of his children, by imposing universal responsibility for their acts. This decision was rendered in December, 1917, and the opinion contains a very exhaustive review of cases involving the question presented in this case, and reaches the conclusion heretofore stated.
Also in the case of Blair v. Broadwater, 121 Va., 301, decided in September, 1917, by the supreme court of Virginia, it is held that the relationship standing alone does not render a father liable for the acts of his minor daughter; that such liability must result from the relation of master and servant or principal and agent. In that case the record discloses that a daughter, with her father’s consent, was operating his automobile for the pleasure and entertainment of herself and her cousin. The car was bought and kept by her father for the use and pleasure of himself and family, and it affirmatively appeared that at the time of the accident it was not being used on any errand or business of the father. The court emphasizes the proposition that the liability results, if at all, from the fact of agency, which fact must be proven; that no presumption of agency arises merely from domestic relationship.
Likewise, in the case of McFarlane v. Winters, supra, decided in February, 1916, it was held that *199 the mere fact that a father owned an automobile which he allowed his minor son to drive would not establish the father’s liability for injuries resulting from the son’s negligence while operating the car in the absence of the father.
In Cohen v. Meador, supra, decided in September, 1916, the liability of the owner of an automobile for injuries occurring while the car is being used by another depends ordinarily upon the existence of the relation of master and servant between the owner and driver of the machine, and that relationship alone does not make a father answerable for the acts even of his minor son, and clearly not of a son over twenty-one years of age.
In the case of Linville v. Nissen et al., 162 N. Car., 70, the conclusion of the court was substantially the same as that announced in the cases above cited. The circumstances appearing in the record in that case are somewhat similar to those in the case at bar. The court held that the doctrine of respondeat superior applies only when the relation of master and servant exists between the wrongdoer and the person sought to be' charged for a wrong, and further, that a child does not become the parent’s servant so as to make the parent liable by the mere fact of the relationship of parent and child, and that the rule must still be applied that the master is not responsible for the torts of his servant committed at a time when he was not acting within the scope of his employment and that a father is not liable for the negligent act of his son not committed while engaged in the father’s *200 business but in the pursuit of his own purpose and ip the consummation of his own personal desire;
To the same effect as the cases above considered is the opinion of the supreme court of Illinois in the recent case of Arkin v. Page, supra, decided in April, 1919, wherein the court holds that the relation of master and servant does not arise from the mere fact that the purpose for which the father purchased the automobile was the pleasure of the family, and that therefore he is not liable for injury resulting from the negligent driving of his son whom he permitted to use such automobile for the son’s own pleasure. In this case the son was 20 years of age, and at the time of the accident was using his! father’s automobile for his own purpose and not upon any mission or in the discharge of any duty for his father.
It is well suggested by the court in that case that the doctrine of liability under such circumstances is based upon the proposition that a son, though engaged exclusively in the pursuit of his own purpose, without the direction, control, advice, consent or knowledge of the father, is still to be considered as his agent and carrying on his business, and it'is there also pertinently suggested that if the son under the circumstances is to be regarded as the father’s agent because he was carrying on the father’s business, to-wit, amusing himself, the father would also be liable in the event the son causes injury while pursuing his own purpose, whether business or entertainment, by the use of a horse and buggy, or boat,- or ball bat, or any other instrumentality provided by the father.
*201 The same line of reasoning was followed and the same rule applied in the case of Watkins v. Clark, 103 Kans., 629, decided in December, 1918, and in the case of Bolman v. Bullene, 200 S. W. Rep., 1068, decided in February, 1918.
Under the instructions given to the jury in the instant case the defendant would be held liable for the negligence of the son upon the sole ground that the automobile having been purchased for the use of the family the son in the use and enjoyment of the same for his individual purpose and in pursuit of his own pleasure became the agent of the father. The question of liability was, therefore, made dependent upon the motive which actuated the father in the purchase of such car,, the purpose for which he procured it, and the permissive use thereof by the son. As we have seen the application of such test alone would be violative of every principle of agency and cannot be sustained.
The judgment of the court of appeals reversing the common pleas court is, for the reasons heretofore stated, affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Johnson, Donahue, Wanamaker and Robinson, JJ., concur.