Staunton.

COHEN AND OTHERS v. MEADOR.

September 11, 1916.

1. AUTOMOBILES—*Acts 1910, Ch. 326—Instructions.*—In view of the act of March 17, 1910 (Acts 1910, ch. 326, sec. 12), declaring that the driver of an automobile shall keep a careful look ahead for the approach of horseback riders, and, upon their approach, shall slow up and keep his machine under thorough and careful control, it is not error to refuse to instruct the jury that such driver has the right to presume that a horse ridden along a road frequented by automobiles is gentle and not liable to become frightened and unmanageable, and that he has the right to act upon that presumption, until he knows, or by the exercise of ordinary care should know, that such horse is liable to become frightened and unmanageable. The instruction is plainly in conflict with the statute.

2. AUTOMOBILES—*Riding Scary Horses on Highway—Contributory Negligence—Statutory Regulation.*—It is not error to refuse to instruct the jury that if they believe from the evidence that the plaintiff's horse was afraid of automobiles and upon meeting one was likely to become frightened and unmanageable, and that automobiles were frequently passing along the road upon which the plaintiff was riding at the time of the accident, and that the plaintiff knew these facts, then he was guilty of contributory negligence. The statute above quoted was passed to meet just such a state of facts as is suggested by the instruction. There may be exceptional cases in which the wild and dangerous character of a horse would make his use, on a road frequented by automobiles, negligence *per se*, but such is not the average case, nor the case at bar.

3. AUTOMOBILES—*Statutory Regulations—Instructions—Disregarding Statute.* In an action to recover damages for a personal injury resulting from the fright of a horse by an automobile while the horse was being ridden on a public road, it is not error to refuse an instruction which disregards the statutory duty of the driver of the automobile "to slow up and keep his machine under thorough and careful control." The purpose of the statute was to give the rider of the horse the benefit of every reasonable precaution on the part of the driver of the machine, until the horse has actually passed the machine, or been passed by it.

4. AUTOMOBILES—*Acts 1910, p. 503.*—The act of March 17, 1910 (Acts 1910, ch. 326, p. 503), was passed for the express purpose of regulating the use of automobiles on the public highways. Whether merely declaratory of the common law or not, the statute is an important one, and its enforcement in letter and spirit is demanded by very high considerations of humanity and public safety.

5. AUTOMOBILES—*Dangerous Instrumentaility—Injury by Driver—Liability of Owner—Parent and Child.*—An automobile is not such a dangerous machine or agency as to make applicable to it the rules requiring extraordinary care in the use and control of instrumentalities which are dangerous *per se.* The liability of the owner, therefore, for injuries occurring while the car is being used by another, depends ordinarily upon the existence of the relation of master and servant between the owner and driver of the machine. Relationship alone does not make a father answerable for the acts even of his minor son, and clearly not for a son over twenty-one years of age. The liability in such cases results, if at all, from the fact of agency, which fact must be proved. No presumption of agency arises merely from the domestic relationship.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Reversed in Part.*

The opinion states the case.

*Bond & Bruce* and *A. N. Kilgore,* for the plaintiffs in error.

*Fulton & Vicars* and *John Roberts,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

I. F. Meador brought this action to recover damages against J. Cohen and E. H. Cohen for personal injuries sustained by him when the horse which he was riding on a public highway was struck by an auto-

mobile owned by J. Cohen and operated by his son, E. H. Cohen. These parties will be referred to herein as plaintiff and defendants, respectively, in conformity to their positions in the trial court. The jury returned a verdict for the plaintiff against both defendants, and thereupon the court rendered the judgment brought up by this writ of error.

It becomes necessary to deal separately with the liability of J. Cohen and of his son, E. H. Cohen, and we will first take up the case of the latter.

There was a conflict of testimony upon many features of the case, but the evidence of the plaintiff either showed or materially tended to show, in addition to those already stated, the following facts, which under familiar principles, we must regard as established: The plaintiff was traveling east on a horse which he knew to be afraid of automobiles. The defendant, E. H. Cohen, was driving west in a large Cadillac car. A man on horseback, when at the point of the accident, or at any point for more than one hundred feet to the west thereof, could be seen by the driver of an automobile coming from the east for a distance of at least seven hundred feet. The situation, therefore, was such that, considering the comparative rate of speed of each, the defendant either saw or could have seen the plaintiff at a distance of at least 700 feet before they met, and continuously thereafter until the collision occurred. When the car was within about 350 feet of the horse, the latter began to show very marked signs of fright, and the plaintiff then attempted to check the approach of the car by calling to the driver to "hold up," and by signalling with his hand, but the driver apparently took no heed of the plaintiff's distress, and drove the car on at a rapid rate, without any perceptible reduction of speed until the horse was

struck and the plaintiff was thrown violently to the ground. The plaintiff was keeping his horse as far to the south (his right) of the road as possible. The driver kept either to the south (his left) or in the center of the road, and did not bear to his right, as he could easily have done at that point, and the car struck the hind parts of the horse as the latter, in its fright, reared and backed from the southern and outer edge of the road.

Upon these facts, which, as we have stated, are controverted, but which the jury might reasonably have found from the evidence, it is manifest that the judgment, as to E. H. Cohen, cannot be disturbed, unless there was some error in the manner in which the case was submitted to the jury.

The first assignment of error, relating to the admission of certain testimony, was not adverted to in the oral argument, nor in the reply brief of counsel for defendants, and is in our opinion of minor importance in its subject matter, and without merit from a legal standpoint. For these reasons, we do not discuss it further.

The only assignment, so far as E. H. Cohen is concerned, which requires any extended discussion, is based upon the action of the court in refusing several instructions asked for by the defendants, and in giving one asked for by the plaintiff.

The first one of these was as follows: "The court tells the jury that a driver of an automobile has the right to presume that a horse ridden by any person along a road frequented by automobiles is gentle and not liable to become frightened and unmanageable, and that he has the right to act upon that presumption until he knows, or in the use of ordinary care should

know, that such horse is liable to become frightened and unmanageable.''

This instruction was properly refused, because, if for no other reason, it is plainly in conflict with the act of March 17, 1910, (Acts 1910, c. 326) section 12 of which provides that, ''The owner, operator, conductor, driver or occupant of any such machine shall keep a careful look ahead for the approach of horseback riders, or vehicles drawn by horses, or other animals, and upon the approach of such riders or vehicles, shall slow up, keep his machine under thorough and careful control, give ample roadway to such rider or vehicle, and if signaled by such rider or occupant of such vehicle, or be otherwise requested thereto, shall immediately bring his machine and its engine to a full stop and allow ample room and time to allow such rider or vehicle to pass.''   Under the terms of this wise and just statute, the driver of an automobile must act upon a presumption which is exactly the reverse of that which is asserted in the instruction.

The defendant further requested the court to instruct the jury as follows: ''The court instructs the jury that if they believe from the evidence that the plaintiff's horse was afraid of automobiles and upon meeting an automobile was likely to become frightened and unmanageable; and that automobiles were frequently passing along the road upon which plaintiff was riding at the time of the accident, and that plaintiff knew of said facts, then it was contributory negligence upon his part to ride the said horse along the said road.''

We cannot at all assent to the doctrine announced in this instruction, and are of opinion that the court was clearly right in refusing it.   The statue above quoted was evidently passed in contemplation of, and

to provide for, just such a state of facts as is suggested in the instruction. There may be exceptional cases in which the wild and dangerous character of a horse would make his use, on a road frequented by automobiles, negligence *per se*, but in the average case, and in such a case as we think the evidence, viewed most favorably for defendants, shows this one to be, it is a fair presumption that a horse which is likely to become frightened and unmanageable upon meeting an automobile in motion can, with reasonable safety to the rider, be taken by the car if the conditions of the statue are complied with. The plaintiff's horse had been struck by a machine once before, and was "pretty shy of machines;" but there was nothing in the evidence to indicate that a man accustomed, as plaintiff was, to the use of horses, would experience any serious difficulty in riding the horse by a car if the driver thereof obeyed the statue. Its requirements were left wholly out of view by the instruction.

Defendants' instruction No. 5 was likewise properly refused, because it, too, was open to the objection, among others, that it ignored the statue.

Instruction No. 4, asked for by defendants and refused was as follows: "The court further tells the jury that if they believe from the evidence that the plaintiff was on his horse by the side or in the edge of the road at the gate at the place of the accident; that the defendant had a right to presume that the plaintiff had placed himself there to allow defendant to pass; that until the horse showed evidence that he was frightened and defendant saw that the horse was likely to become frightened, or by the use of reasonable care should have seen same, there was no duty on defendant to stop his automobile, and if the jury believe that after the said condition of the horse became known, or by the

use of ordinary care, should have become known to the defendant, if they believe it did so become known to the defendant he did all that he reasonably could do, under the circumstances, to prevent the injury complained of, they will find for the defendant."

This instruction correctly states that, under the conditions therein named, "there was no duty on the defendant to stop his automobile;" but it disregards his duty "to slow up and keep his machine under thorough and careful control." The instruction, taken as a whole, minimizes, if it does not violate, the plain purpose of the statue to give the rider or driver of horses the benefit of every reasonable precaution on the part of the operator of a machine, until the horses have actually passed the machine or been passed by it. It is clear that the instruction was misleading and had a tendency to permit the jury to conclude that the defendants' duty to take extra precautions for the plaintiff's safety began only when the frightened condition of the horse became known to him.

Instruction No. 6, requested by defendants and refused, though less objectionable in degree than No. 4, is subject to the same criticism, and was properly refused.

The fundamental error in all of these instructions was due to a failure or unwillingness to give proper effect to the pertinent provisions of the statute aforesaid, which was passed for the express purpose of regulating the use of automobiles on the public highways. It is contended by counsel for defendants that this statute was merely declaratory of the common law. Perhaps so. Perhaps the courts, in applying the rules of the common law to the new conditions arising out of the use of automobiles on the public roads, would have worked out a set of rules substantially the same

as those prescribed by the legislature. But whether so or not, we are of opinion that the statute is a most important one, and that its enforcement in letter and spirit is demanded by very high considerations of humanity and public policy. In the present case the evidence fully warranted us in saying that a compliance with the act would in all probability have averted the accident.

There was no error in the judgment against E. H. Cohen.

As to the liability of J. Cohen, the material facts, and consequently the controlling principles, are wholly different. He was the owner of the car, but was not present and did not know that his son, E. H. Cohen, was making the trip which resulted in the accident.

The testimony of the younger Cohen, which in this respect is not contradicted, is that the Cohen family had just returned from Big Stone Gap; that he had driven them in the car; that on his return he left his "farther and mother and family" at the store (meaning his farther's store); that, with his two small brothers, he had started to put the car up when he met two friends whom he invited to go with him for a ride; that they accepted and he was taking them towards West Norton when he struck the horse; that he supposed his father thought he had taken the car to put it up; and that his father did not know that he had the car out at that time. It further appears that E. H. Cohen, up to the time of the accident, had done practically all of the driving of the car for his father and the family.

In this state of the evidence we do not think the judgment against J. Cohen can be upheld. The authorities seem to have established the doctrine that an automobile is not inherently such a dangerous

machine or agency as to make applicable to it the rules requiring extraordinary care in the use and control of instrumentalities which are dangerous *per se.* David's Law of Motor Vehicles, sec. 11; 2 R. C. L., sec. 24, p. 1190; *McNeal* v. *McKain*, 33 Okl. 449, 126 Pac. 742, 41 L. R. A. (N. S.) 775, 779, and many cases cited. The liability of the owner, therefore, for injuries occurring while the car is being used by another, depends ordinarily, and in the case at bar, upon whether the familiar rule of agency, known as the rule of *respondeat superior*, applies. Relationship alone does not make a father answerable for the acts even of his minor child, and clearly not so for those of a son, as the one in this case probably was, over the age of twenty-one years. The liability in such cases results, if at all, from the fact of agency, and this fact must be proved. No presumption of agency arises merely from the domestic relationship. See note to *Johnson* v. *Glidden*, 74 Am. St. Rep. 802; 21 A. & E. Enc. L. (2nd ed.) 1059; 29 Cyc. 1665.

The evidence in this case fails to disclose any facts upon which the defendant, E. H. Cohen, can be held to have been representing his father at the time of the plaintiff's injury; and the father, accordingly, cannot be held liable. As was said in *Maher* v. *Benedict*, 123 App. Div. 579, 108 N. Y. Supp. 228, "Liability cannot be cast upon the defendant because he owned the car, or because he permitted his son to drive the car whenever he wished to do so, or because the driver was his son. Liability arises from the relation of master and servant, and it must be determined by the inquiry whether the driving at the time was within the authority of the master in the execution of his orders or in the doing of his work." See also *Doran* v. *Thompson*, 76 N. J. L. 754, 71 Atl. 296, 131 Am. St. Rep. 667; *Erlick*

v. *Heis* (Ala.) 69 So. 530; *Heissenbuttel* v. *Meagher*, 162 App. Div. 752, 147 N. Y. Supp. 1087; *Parker* v. *Wilson*, 179 Ala. 361, 60 So. 150, 43 L. R. A. (N. S.) 87.

It follows from what has been said that the judgment must be affirmed as to E. H. Cohen; and that as to J. Cohen it must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had, if plaintiff shall be so advised, in conformity with the views herein expressed.

*Reversed in part.*