# Staunton

WILLIAM R. YONKER V. GARNETT S. WILLIAMS.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

*Cocke, Hazlegrove & Shackelford* and *John D. Carr,* for the plaintiff in error.

*Burnett Miller* and *Martin & Abbott,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grows out of an automobile accident which happened between ten-thirty and eleven o'clock on Sunday night, May 3, 1936, on the Lee highway, about five miles north of the city of Roanoke, Virginia.

A Ford coupe owned and driven by William R. Yonker, the plaintiff in error, who will hereafter be referred to as Yonker, collided with the rear of a truck owned by E. Edwin Michael, which was in charge of and operated by Earl Spiker and his helper, Daniel G. Sager. The supply of gas of the truck had given out and it had been stopped on the right-hand lane of the three lane highway, known as the Lee highway, about half way up what is known as Boxley hill.

Garnett S. Williams, the defendant in error, who will subsequently be referred to as Williams, was riding with Yonker. These young men were cadets of the Virginia Polytechnic Institute at Blacksburg, Virginia.

On the morning of the day of the accident, which was Sunday, Yonker requested Williams to drive with him from the Institute to Roanoke to help him adjust a charge of speeding which had been preferred against him. They intended to return to Blacksburg after their mission had been fulfilled but changed their plans and made engagements (now known as "dates") by telephone to call on some of their girl friends at Hollins college. At the college an afternoon drive was decided upon, which took them back to Roanoke. The record discloses that the young men regaled themselves *en route* at the Dairy fountain with a drink of whiskey. Later on in the evening they went to the Patrick Henry hotel, in the city of Roanoke, for supper. While at supper the young men enjoyed what was debonairly termed "a few" cocktails. They then returned to the college that the young ladies might attend chapel exercises from seven-thirty to eight-thirty, when Yonker and his girl friend drove again to Roanoke. Williams and his friend could not leave the college campus at that hour of the night because the girl was a freshman and that privilege was denied her.

The two young men finally left the college about 10:45 at night to go back to the V. P. I. and it was on their return trip *via* Roanoke that the accident occurred.

It had rained, the roads were wet and the night was cloudy and dark. A number of witnesses introduced by Yonker testified that there was a great deal of fog and the visibility was very poor. Witnesses for Williams detailed a different state of facts as to the condition of the weather and the visibility. This establishes a conflict which must be resolved in favor of Williams because the verdict of the jury and the judgment of the court were with him.

A number of other young men, who were from Roanoke and its environs, were calling at the college that night and left for their destinations about the time of the departure of Yonker and Williams. Six of them testified in this case and their testimony will be noted briefly presently.

The truck was stopped as far to the right as it could be placed without going on a narrow dirt and gravel shoulder about twelve inches wide. The right margin of the shoulder formed the left bank of a ditch about one and one-half feet in depth.

The coupe was a 1929 model, capable of developing a speed of ninety miles an hour. It became necessary to stop the truck because it could not proceed without an additional supply of gasoline, which Sager had been sent to procure at the nearest filling station.

The impact resulted in serious injuries to both Yonker and Williams, the injuries of the latter being much graver. They were both taken to a hospital in the city of Roanoke, where they remained for an extended period. Williams was unconscious and remained so for several weeks.

In August, 1936, Williams instituted this suit against Yonker and Michael. The latter was the owner of the truck.

The defendant, Michael, at the close of the trial, demurred to the evidence and his demurrer was sustained. This action of the court is not an issue here and will not be again referred to.

The jury found a verdict for the plaintiff, which was confirmed by the court.

The case is thus between Williams and Yonker and it is before us upon three assignments of error urged by Yonker.

The assignments are *in haec verba:*

"(1) The court erred in refusing to grant the defendant Yonker's motion to strike the evidence of the plaintiff and in refusing to set aside the verdict for the reason that there had been no proof of gross negligence on the part of the defendant Yonker.

"(2) The court erred in refusing to set aside the verdict on the ground that the evidence shows that the plaintiff Williams was guilty of contributory negligence, in that he failed to exercise ordinary care for his own safety.

"(3) The court erred in excluding the evidence offered by the defendant Yonker that the truck belonging to the

defendant Michael was equipped with flares and that the truck driver failed to use them before the accident, when the exercise of ordinary care under existing conditions required their use."

The third assignment of error may be disposed of at once.

It may be said, in accordance with the evidence, that the flares referred to were carried by the truck because two of the states, Maryland and Pennsylvania, through which the truck traveled as a carrier, required them. It is not a statutory requirement in Virginia.

The counsel for Yonker urge that inasmuch as they were at hand they should have been used, under the conditions which obtained, as an extra precaution, and that it was the reasonable thing to do in the interest of the safety of persons using the highway. Assent to this view would lead to a multiplicity of things that might have been done as a matter of precaution and it would be difficult to select and adopt any particular mode as the most efficient.

For instance, there is evidence tending to show that if the flares had been employed they would not have been more effective, if as much so, as the statutory lights on the truck, which were in operation at the time. They were said not to be capable of reflecting light but their lights flicker or move if there is a sufficient current of air.

But aside from this, if the evidence relating to the flares had been admitted it would only have affected the defendant, Michael, for the omission to use them, if negligence at all, would have been his negligence. If two defendants are negligent one of them cannot be exonerated by urging and showing the negligence of the other. Where the concurring negligence of the two produces a single injury and each is its proximate cause they are both liable. (*Etheridge* v. *Norfolk Southern R. Co.,* 143 Va. 789, 129 S. E. 680, 683; *Brown* v. *Parker,* 167 Va. 286, 189 S. E. 339).

There is no merit in the contention that the court's action, with respect to the flares as evidence, is error that can advantage Yonker.

■ Our very real concern is with the question of whether the evidence is sufficient to sustain the verdict of the jury, keeping in mind that if there is a conflict in the evidence as to the existence of negligence of a specific character, grade or degree, the matter is for the determination of the jury.

This court, in the case of *Poole* v. *Kelley,* 162 Va. 279, 290, 173 S. E. 537, 541, said, through Holt, J.: "We do not undertake to say that any certain speed is gross negligence where the road is wide and straight.

■ " 'What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.' *Grand Trunk Railway Co. of Canada* v. *Ives,* 144 U. S. 408, 12 S. Ct. 679, 683, 36 L. Ed. 485; *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77.

"There was ample evidence to warrant the submission of this question to the jury. It was submitted under proper instructions and decided adversely to the defendant.

"Gross negligence consists not so much in speed, as an abstract proposition, but in Poole's attempt, when within thirty feet of Bostick's car, to pass it, as he did. He cut to the left and must have cut sharply to the left, and stepped upon the accelerator. He then, as might have been expected, lost control."

The case of *Poole* v. *Kelley, supra,* was cited with commendation by this court in the case of *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310, 314, and therein copiously quoted. It was said in that case, through Spratley, J., in discussing the question as to whether the assignments of error, predicated upon certain instructions, were well taken: "The submission of the question of gross negligence to the jury is the main error relied on. It follows from what we have said that such assignments of error are not well founded."

This court held, in the case of *Boggs* v. *Plybon, supra,* and subsequently in a number of kindred cases, that there must be present gross negligence upon the part of the host to fix or establish liability upon him for injury to an invited guest riding in his automobile.

That view is approved by courts of last resort in many jurisdictions. We adhere to it, without implying that such adherence in anywise weakens or disturbs the ancient and settled doctrine that controverted issues of negligence are for the jury to decide, upon the facts of the particular case.

We will now note some of the potential facts which we gather from the evidence in the case in judgment and which, doubtless, influenced the jury and the court respectively in their verdict and judgment.

P. F. Sprenger, a sergeant in the Virginia State Highway Police service, was called to the scene and arrived about twenty or thirty minutes after the accident. He said that all the lights on the truck that are required by law were burning and several extra lights across the rear were also lighted. He drove down the road northwardly, from which direction Yonker's car was traveling when it collided with the truck, to see how far the truck could be seen looking from the north. He said that it could be seen a distance of a half or three-quarters of a mile.

He testified that he asked Daniel G. Sager, who was in the cab of the truck when the accident happened, if he cut the lights off at the time and he replied that he did not and

that the lights were all burning at the time of the accident, just as Sprenger saw them.

Several days later this witness went to the hospital and talked with Yonker, who said that he did not see the truck until it was too late; that he was having some trouble occasioned by his windshield becoming clouded by mist or vapor which exuded from the radiator which was either without a cap or leaking. Yonker told the witness that his speed was from 40 to 45 miles an hour.

Daniel E. Sager testified that he had had fourteen years of experience with driving trucks at night. He corroborated the testimony of Sprenger as to the lights which were in operation and as to the distance that the truck could be seen from the north.

Earl Spiker, who was in charge of the truck, testified that there were ten lights on the rear of the truck and it could be seen between a mile and seven-tenths of a mile and but for the turn in the road it could have been seen a mile regardless of the condition of the weather. These estimates of distance were made looking from the north.

R. L. Quarles, an attorney, who had been filling an engagement at the college and was returning to Roanoke in his automobile, testified that he saw the truck at a distance of a hundred feet and avoided it by driving to the left and his speed was probably 40 miles an hour.

Julian Rutherford, Jr., another caller at the college, in driving back to Roanoke said that he subconsciously knew there was something ahead of him because someone in his car called his attention to it. He did not consciously see the truck.

With this contradiction of terms, and the limitation of the power of the senses, and their effect, the jury, in its province, has dealt wisely.

His speed was 35 to 40 miles an hour but he was able to stop his car twenty feet behind Yonker's car, which had collided with the truck. Thus he avoided the mishap of a collision.

John D. Hatcher, another caller driving to Roanoke, said that the occupants of his car saw the truck when they were from fifty to seventy-five feet from it, and there was a car ahead of his. He was driving from 25 to 30 miles an hour and he said that a speed in excess of his could not have been employed with safety.

W. C. French, who was driving the Hatcher car, gave an account similar to that of Hatcher.

J. Worst saw the truck a hundred yards ahead of his car by the reflection of the lights of a car which he was meeting. He said that he did not see the lights on the truck but could not say that they were not on it.

Yonker was asked this question:

"Q. Then you really don't know why you didn't see it (the truck)?

"A. Frankly, I don't."

It was in evidence that the effect of the impact on the truck was to force out of alignment its left rear wheel, to break the spring hanger or shackle bolt and it had to be jacked up and repaired where it stood. It was carrying a load of eight and one-half tons.

Mrs. Inez Rixey, an aunt of Williams, said that Yonker told her while he was in the hospital that just before the accident he spoke to Williams about the darkness of the night and the driving conditions and that Williams replied, "Slow down."

The purpose of stating this evidence in detail is to emphasize the fact that the jury had before them very positive evidence shedding light upon the most important features of the case.

Our inquiry accentuates the existence of certain of these features which are convincing of the propriety of the action of the trial court.

The jury was within its province to give credence to the testimony that the truck was lighted as the law required it to be. There was credible testimony that it could be seen, looking from the direction in which Yonker was

going, at least one-half of a mile, despite the weather conditions obtaining that night.

The jury was well within its rights to believe that Yonker, without maintaining any outlook, drove headlong, at a speed of from 40 to 45 miles an hour, into the truck which was parked on the extreme right side of the highway, materially damaging the truck, which was heavily loaded, and badly wrecking his own car. There were cars which passed the truck with safety before and after the accident. The driver of one of these cars saw the truck one hundred feet away and avoided it. Another, driving at a speed of 35 to 40 miles an hour, stopped his car twenty feet behind the Yonker car and passed on in safety.

Two others saw the truck from fifty to seventy-five feet away and stopped without mishap. These were traveling at a speed of from 25 to 30 miles an hour and declared that a greater speed would have rendered their going hazardous.

In the light of all this we cannot say that there is presented to us a case which is without evidence to support the verdict of the jury. On the contrary, we think that the verdict and the judgment of the court are amply fortified by cogent evidence.

Contributory negligence is urged as a defense. One who relies upon this plea to absolve him from liability must establish it by proof of some legal sort. This has not been done.

There is testimony, emanating from the defendant, that Williams said to him as they were proceeding on their way: "Slow down." There is no evidence tending to show that Williams apprehended or should have apprehended danger at the time of the accident and warned Yonker of it. Yonker had the advantage of a windshield wiper to clear the glass and render visibility better for him. Williams was without this means to aid his seeing. The very confidence which Williams had in Yonker's skill as a driver might well have lured him into an assurance of safety. If Williams saw the obstacle ahead he had the right to assume that

Yonker would seasonably turn to the left and escape striking it.

In the case of *Morris* v. *Dame's Ex'r*, 161 Va. 545, 171 S. E. 662, this court said, through Epes, J. (Syllabus): "There was no evidence sufficient to support a verdict finding that prior to or at the time that the plaintiff first saw the truck of the town of Christiansburg, the driver of the Dame truck had been or was guilty of driving in a reckless or negligent manner or at an excessive speed. The uncontradicted evidence was that the driver of the Dame truck saw the Christiansburg truck as soon as, or before, the plaintiff saw it, and showed his consciousness of its position, proximity and movements; and the evidence failed to show any fact or circumstance which should have put the plaintiff on guard that the driver of the Dame truck would not use all precautions necessary to prevent a collision. Under these circumstances no duty rested upon the plaintiff to warn the driver of the proximity of the Christiansburg truck or to protest against the speed at which he was driving. *Held:* That it was error to instruct that such duty rested upon the plaintiff."

We find no merit in the motion to dismiss the writ of error on the ground of the insufficiency of the identification of the evidence. The requirements of this court's Rule XXIV were performed.

It follows from what we have said that the judgment of the trial court should be affirmed, and this we do.

*Affirmed.*