# Richmond

J. B. HACKLEY AND J. B. HACKLEY, JR. V. C. L. ROBEY,
ADMINISTRATOR OF RATCLIFFE MERCHANT, DECEASED.

March 10, 1938.

Present, All the Justices.

The opinion states the case.

*Charles Pickett* and *James Keith,* for the plaintiffs in error.

*E. E. Garrett, Stilson H. Hall* and *James G. Martin & Son,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This is an action for wrongful death brought by the administrator of Ratcliffe Merchant, who was killed while riding in an automobile owned by J. B. Hackley and driven by his son, J. B. Hackley, Jr. There was a verdict for $5,000 in favor of the administrator against both J. B. Hackley and J. B. Hackley, Jr., on which the trial court entered the judgment which is here for review.

First, there is a motion to dismiss the writ of error on the ground that no valid supersedeas bond was given within six months of the date of the final judgment, as required by Code, section 6355 (as amended by Acts of 1926, ch. 10, p. 19).

A writ of error and supersedeas was awarded by order of this court on January 20, 1937. A bond in proper form was executed and filed on January 23rd, the last day of the six-month period. But the writ and supersedeas required by Code, section 6350, was not issued by the clerk of this court until January 25th. It is argued that the bond, if not void, did not become effective until the latter date, and hence was too late.

This contention is not sound. There is no suggestion in the statute that such bond must be given or shall become effective only after the issuance of the writ by the clerk.

It is true that we said in *Branch* v. *Richmond Cold Storage,* 146 Va. 680, 688, 132 S. E. 848, 851, that the bond can be given "only after a writ of error has been granted." That was done in this case, for the writ of error was "granted" or "awarded" by the order of this court (Code, section 6348, as amended by Acts 1920, ch. 300, p. 416; Acts 1922, ch. 45, p. 47), and not by the subsequent issuance of process by the clerk.

In *D. F. Tyler Corp.* v. *Evans,* 156 Va. 576, 579, 580, 159 S. E. 393, 394, it was said: "When a writ of

error or appeal has been granted and the record and petition have been delivered to the clerk and bond executed as required by law, the case is properly on the clerk's docket. Process or summons simply matures the case for hearing by this court." It follows from this, we think, that the issuance of the writ by the clerk is not a condition precedent to the validity of the bond.

■ Furthermore, since the decision in *Branch* v. *Richmond Cold Storage, supra,* the General Assembly has by the Acts of 1934, ch. 130, p. 172, amended Code, section 6338 (Code 1887, section 3456, as theretofore amended by Acts of 1908, ch. 31, p. 36), so as to provide that a judgment debtor, in contemplation of applying to this court for an appeal or writ of error, may, in lieu of a suspending bond, file in the clerk's office below a supersedeas bond conditioned according to the provisions of Code 1919, section 6351 (Code 1887, section 3470, as amended by Acts of 1914, ch. 355, p. 713), as amended by Acts of 1934, ch. 132, p. 173, thereby expressly recognizing that such supersedeas bond may be given before the writ is issued or even awarded.

The motion to dismiss is denied.

We turn to the merits of the case. The accident happened in the early morning of October 21, 1934, in the western outskirts of the city of Richmond, where Broad street crosses by an overhead bridge the Belt Line railroad. At that point Broad street is straight, practically level, smooth-paved, and bounded by an eight-inch curb. It is seventy-six feet wide until it reaches a point seventy-four feet from the bridge. Beginning at this point it narrows to a width of forty-two feet and six inches where it crosses the bridge. On each side of the bridge is a concrete abutment. This situation is brightly illuminated by lights, about one hundred feet apart, placed along both sides of the street.

Merchant was a student at the University of Richmond, while J. B. Hackley, Jr., was a cadet at the Virginia Military Institute. The two had been lifelong friends and together had attended a football game in Richmond during the pre-

vious afternoon and later a dance at the John Marshall hotel. At midnight they left the dance and went to the English Tavern, just beyond the western city limits, where they stayed until about three A. M. Hackley drank some beer at this place but there is no evidence that either of them was intoxicated.

After leaving the English Tavern Hackley drove Merchant and himself east on Broad street, across the bridge where the accident happened a short time afterwards, to a restaurant on Broad street. There they had coffee and sandwiches.

Leaving the restaurant they entered the car and started west on Broad street, bound for the University of Richmond where they intended spending the night together. The weather was fair and the pavement was dry.

Other than the occupants of the car there were no eyewitnesses to the accident which happened a few minutes later. Hackley suffered a fractured skull, as the consequence of which he has no recollection of anything which took place from the time they entered the car until he was thrown out. Merchant was killed almost instantly.

At any rate the undisputed physical facts show that the car failed to take the curve where the street narrows as it approaches the bridge. It went up over the eight-inch curb and struck a lamppost located about twelve inches beyond the curb and twenty-four feet east of the bridge. After striking the lamppost the car turned over, crushing the top and strewing tools across the bridge, and finally came to a stop, upright, headed in the opposite direction to which it had been going, thirty feet west of the bridge and one hundred and eighty-nine feet from the lamppost which had been hit. Both young men were thrown from the car and were found lying in the street by a passing motorist. Merchant received injuries of which he died in a few minutes. The car was demolished.

The first assignment of error is that the trial court erred in not striking the evidence or in not setting aside the verdict of the jury as to both defendants on the ground that

the evidence failed to show that the driver of the car, young Hackley, was guilty of gross negligence necessary to make him liable to his gratuitous guest, Merchant, under the settled decisions of this court, following *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77. See also, *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310; *Yonker* v. *Williams,* 169 Va. 294, 192 S. E. 753, and cases there cited.

The argument is that there is no proof as to how the accident happened, and no evidence that the driver of the car was guilty of gross negligence.

It is true that we do not have from the lips of any eye-witness the story of just what happened. But we think the admitted physical facts and the undisputed circumstances were such as to warrant the jury in inferring how the accident happened, and that it was the result of the gross negligence of the driver of the car.

This tragedy occurred on the main thoroughfare of the largest city in the State. The street is level, straight, and well lighted. While the width of the street diminishes as it approaches the bridge, yet this situation is perfectly obvious. The eight-inch curb, which marked the boundary of the street, and the abutments of the bridge were plainly visible. At the narrowest point on the bridge the street has a width of forty-two feet and six inches, which is more than twice that of the usual highway. There were no intervening obstructions, nor was the situation in any way complicated by traffic or other cars. In addition to this the driver of the car was, or should have been, familiar with the situation as he had driven across the bridge only a few minutes before the accident.

And yet, notwithstanding these conditions and circumstances, we know that the car ran up over the eight-inch curb, sideswiped a lamppost on the sidewalk, turned completely over, skidded along the street and across the bridge, and came to a stop one hundred and eighty-nine feet from the first point of collision. It was completely demolished and both occupants hurled to the pavement.

██ From these facts the jury had the right, we think, to infer that young Hackley was driving the car at a very high rate of speed; that he was not maintaining any lookout for a situation which was plainly obvious to him, if, indeed, he was not actually familiar therewith; and that, under the circumstances, this constituted gross negligence.

See *Yonker* v. *Williams, supra,* in which we held that it was within the province of the jury to find the driver of a car guilty of gross negligence in driving headlong, at a speed of from forty to forty-five miles an hour, into the rear of a truck carrying proper rear lights and temporarily stopped on the right side of the highway.

In *Stubbs* v. *Parker,* 169 Va. 676, 192 S. E. 820 (rehearing granted and decision adhered to January 20, 1938, 195 S. E. 688), this court held that the driver was guilty of gross negligence as a matter of law, notwithstanding a contrary verdict, when his car, driven at a high rate of speed, went off the road on a curve and collided with a tree.

██ There is no evidence to support the next contention of the plaintiffs in error that Merchant was guilty of contributory negligence. Young Hackley testified that he had no recollection of the accident other than that he was driving the car. There is no evidence whatsoever that Merchant did or failed to do anything which in any way caused or contributed to the accident.

The next assignment of error is that the trial court should have struck the evidence or set aside the verdict of the jury as to the defendant, J. B. Hackley, the owner of the car and the father of the driver, J. B. Hackley, Jr.

As we have seen, J. B. Hackley was not in the car at the time of the accident, nor was it being driven on any business of his. On the contrary it was being driven by J. B. Hackley, Jr., for his own pleasure and accommodation, with the permission of his father.

The liability of the father is predicated solely upon the theory that the family purpose doctrine obtains in this State, and that the car in question was, in fact, a family purpose car.

In 5 Am. Jur., pp. 704, 705, section 365, it is said:

"The so-called 'family purpose doctrine' is one of comparatively recent origin and rapid growth. This doctrine holds the owner of an automobile which was purchased and maintained for the pleasure of his or her family liable for injuries inflicted by the machine while it was being used by members of the family for their own pleasure, on the theory that the car was being used for the purpose or business for which it was kept, and that the person operating it was, therefore, acting as the owner's agent or servant in using it. It is said to be one of the indispensable requisites of the family purpose doctrine that the person on whom it is sought to fasten liability under that principle owns, maintains, or provides an automobile for the general use, pleasure, and convenience of the family. A direct conflict exists among the courts concerning the doctrine under consideration. * * *

"Some courts have squarely rejected it, while others have as unqualifiedly approved and adopted it. The doctrine undoubtedly involves a novel application of the rule of respondeat superior and may, perhaps, be regarded as straining that rule unduly. There are, however, undoubted practical considerations in favor of the doctrine, since it puts the financial responsibility of the owner behind the car while it is being used by a member of the family, who is likely to be financially irresponsible, in the pursuit and furtherance of the purpose for which the car is kept, and since it relieves the injured person from the difficult task of meeting the owner's claim that upon the occasion in question, the car was not being used for his pleasure or business."

It would serve no good purpose to enter here into an extended discussion of the merits and demerits of the family purpose doctrine. The subject has been before this court in a number of cases to which we will presently refer. Our immediate concern is to remove any existing uncertainty as to whether the doctrine has the approval of this court and will be applied by us.

In *Blair* v. *Broadwater* (1917), 121 Va. 301, 93 S. E. 632, L. R. A. 1918A, 1011, this court declined to apply the doc-

trine and freed the father of liability where a car owned by him, bought and kept for the use and pleasure of himself and the members of his family, as well as for his own business, was being driven by his nineteen-year-old daughter solely for her pleasure and entertainment, with his permission. It was there held that, in the absence of affirmative proof of the relation of master and servant, or of principal and agent, between the father and the daughter, there was no liability on the father for the negligence of the daughter in the operation of the car.

In *Litz* v. *Harman* (1928), 151 Va. 363, 144 S. E. 477, 481, the father was held liable for the operation by his minor son of a car purchased and maintained for business and family use. At the time of the accident, at the mother's request, the car was being driven to take groceries to a camp at which one of her daughters was staying. The family purpose doctrine was discussed, and its principles were approved and applied to the facts related. The opinion expressly states, however, that the conclusion reached was not a repudiation of the principles laid down in *Cohen* v. *Meador*, 119 Va. 429, 89 S. E. 876, and *Blair* v. *Broadwater, supra,* that "the relationship alone of father and son, or father and daughter, does not of itself impose liability upon the father for the negligent operation of his automobile, and such liability, when properly imposed, must result from the relation of master and servant or principal and agent."

In *Green* v. *Smith* (1930), 153 Va. 675, 151 S. E. 282, 283, it was held that since there was no proof that the car was a family purpose car, the doctrine was not applicable. While it was conceded that the doctrine had been applied "to the particular facts shown in the case of *Litz* v. *Harman,*" *supra*, its soundness was questioned.

In *Oliver* v. *Simmons* (1933), 161 Va. 294, 170 S. E. 583, without either approving or rejecting the doctrine, it was held not to be applicable to the facts of that particular case.

In *Baptist* v. *Slate* (1934), 162 Va. 1, 173 S. E. 512, the father was held liable for the operation by his minor daughter of a car owned and maintained for the use and pleasure

of the members of the family, who used it at will. At the time of the accident the defendant's wife, brother, and other passengers were being taken to a dance.

This case was heard by six justices. Justices Holt and Chinn joined in an opinion written by Justice Gregory, in which it was held that since the family purpose doctrine had been adopted in *Litz* v. *Harman, supra,* and recognized in *Green* v. *Smith, supra,* it should be applied to the facts just stated.

In an opinion, concurring in the results, written by Justice Hudgins and in which Chief Justice Campbell and Justice Epes joined, it was held that the father was liable for the negligent operation of the car by his daughter, without resorting to the family purpose doctrine, since the evidence warranted the conclusion that she was acting as his agent or servant in taking his wife and his guests to the dance. These last named justices were of opinion that the family purpose doctrine, while discussed in *Litz* v. *Harman, supra,* was not strictly applicable to the facts of that case, and hence had not been thereby adopted.

It is, of course, elementary that in the absence of the relation of master and servant, or principal and agent, a father is not liable for the tort of his child. The family purpose doctrine recognizes this principle. " 'The rule has been said to rest on the view that where a father provides an automobile for the purpose of furnishing members of his family with outdoor recreation, the use of the car for such purpose is within the scope of the father's business analogously to the furnishing of food and clothing or ministering to their health.' Ann Cas. 1917D, 1003, note." *Litz* v. *Harman, supra* (151 Va. 363, at page 379, 144 S. E. 477, at page 482).

That this is a novel and attenuated application of the principles of agency can not be questioned. So far as we know it has been entirely confined to the operation of automobiles.

As was so aptly said in *Van Blaricom* v. *Dodgson,* 220 N. Y. 111, 115 N. E. 443, 445, L. R. A. 1917F, 365: "We

have never heard it argued that a man who kept for family use a horse or wagon or boat or set of golf sticks had so embarked upon the occupation and business of furnishing pleasure to the members of his family that if some time he permitted one of them to use one of those articles for his personal enjoyment, the latter was engaged in carrying out, not his own purposes, but, as agent, the business of his father."

The real underlying reason for the family purpose doctrine is the theory that an automobile is inherently such a dangerous instrumentality that the owner ought to be held liable for the negligent operation thereof by one to whom he entrusts it, even though the latter may be a mere bailee of the car and not the servant or agent of the owner. Some of the courts have taken the view that an automobile is such a dangerous agency (5 Am. Jur., p. 522, sec. 11) although it was expressly rejected by this court in *Cohen* v. *Meador, supra,* and in *Blair* v. *Broadwater, supra.*

Conceding, then, the correctness of the proposition that an automobile in proper repair is not inherently a dangerous machine, we think the sounder reasoning leads to the conclusion that the family purpose doctrine should be rejected, and that we should adhere to the principles laid down in *Blair* v. *Broadwater, supra.*

Accordingly, we hold that where the head of a family supplies an automobile for the use and pleasure of the family, permitting the members thereof to use it at will, any member of the family thus using the automobile solely for his or her own recreation and pleasure does not become the agent of the head of the family, so as to make the latter liable for damages resulting from the negligent operation of such car. In so far as a contrary view is expressed in *Litz* v. *Harman, supra,* and in *Baptist* v. *Slate, supra,* the same is hereby expressly overruled.

If public policy demands that the head of a family should be held liable in these circumstances, this should be accomplished, we think, by an appropriate act of the General Assembly, and not by judicial pronouncement.

 What we have said is not intended in any way to impinge upon the doctrine laid down by us in *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425, that where the owner of an automobile permits it to be driven by one known by him to be an incompetent or unfit driver, he is liable for his own negligence in knowingly entrusting the automobile to such person.

 It follows from what we have said that the judgment must be reversed as to the defendant, J. B. Hackley.

The remaining assignments of error have been carefully considered. We find in the record no prejudicial error as to the defendant, J. B. Hackley, Jr., and the judgment is affirmed as to him.

*Affirmed in part and reversed in part.*