## CIRCUIT COURT OF STAFFORD COUNTY

Kimberly Hughes,
individually and as parent
and next friend of
Ashley Allen Hughes, a minor

v.

David Brown,
Joseph H. Brown
and Terry Brown

June 21, 1995

Law No. 94000377

BY JUDGE JAMES W. HALEY, JR.

In this case heard by the court, the issues for resolution are: (1) did a parent negligently fail to deny access to a firearm to his child, and (2) was that child negligent in handling the firearm, and if so, (3) was a child injured by that handling contributorily negligent. These issues are apparently of first impression in Virginia.

Joseph Brown had purchased a .25 Raven automatic pistol for home protection. The pistol is loaded by inserting the cartridges into a clip and the clip into the gun through the butt of the handle and thereafter pulling back the action which places a cartridge in the firing chamber. Expert testimony established that the pistol was not defective and that the only way it could be fired was by pressure on the trigger. The pistol is equipped with a sliding safety between the barrel and the grip, on which is designated "F" and "S". With the clip removed, one can determine whether or not a cartridge has been chambered by pulling back the action and observing the firing chamber.

Subsequent to the purchase of the pistol, Joseph Brown had taken his son David with him to a firearms safety course sponsored by the Isaac Walton League. There they were told that firearms should be stored unloaded, that every gun should be presumed to be loaded, that firearms should not be accessible to children, that one should always make sure the safety is on unless the gun is to be fired, that one should never have his finger on the trigger unless he intended to fire the gun, and that one should follow the "laser" rule, that is, one should pretend the pistol shoots a laser beam of light out of the barrel as a reminder not to point the gun inadvertently towards someone. They further learned that for safety purposes guns can be stored in a locked gun cabinet or equipped with a trigger lock, in either event the key kept on the person.

In addition to emphasizing these safety rules, Joseph Brown had further told his son David never to touch the pistol unless he was present. David Brown had never done so, nor had David Brown ever exhibited any violation of the safety rules. David Brown had fired the pistol with his father and knew how it operated.

Joseph Brown stored the pistol, always unloaded, wrapped in an oil cloth and hidden among other personal possessions on the top shelf of a closet in the master bathroom adjacent to the master bedroom. Introduced as defense exhibits 20 and 22 were photographs of this closet which show the same completely filled with various items from the floor to the ceiling. This top shelf was over 6 feet higher than the floor. Joseph Brown stored the clip with cartridges inserted in a closed jewelry or personal possessions box located on the top of a dresser in the master bedroom. He normally only took the pistol down once a year to clean it. Joseph Brown testified that he had never told his son where the pistol or clip were stored and that he did not know David in fact knew their locations.

On March 5, 1994, at about 8 p.m., Allen Hughes, aged twelve, and his older brother Roderick Hughes, aged fourteen, visited at David Brown's home. David was then also aged twelve. David's parents, Joseph and Terry Brown were out shopping. The boys were watching television in the living room. David and Roderick were discussing guns and David told Roderick his father had a pistol. Roderick wanted to see it. Because Allen was wearing headphones, he was not privy to this conversation.

David and Roderick went into the master bedroom and David pulled a box over to stand on so he could reach up onto the shelf in the master bathroom. David retrieved the pistol from that location. At Roderick's

inquiry and request David went to the dresser and removed the clip from the personal possessions box. The clip had six or seven cartridges in it.

The testimony as to what thereafter occurred can be summarized as follows.

Roderick testified that David put the clip "about half way in" and took it out. Roderick took the pistol and pulled back the action and thereby determined there was no cartridge in the firing chamber. At this point Allen entered the master bedroom from the living room, inquiring as to what was going on. Roderick put the pistol behind his back because he did not want Allen to see it. Nonetheless, Roderick produced the gun, and "Allen was trying to get it from me." According to Roderick, he gave the pistol to David and David placed it on the floor next to a nightstand, with the clip lying next to it, and Allen tried to pick it up. Roderick then saw the gun in David's hand and thereafter heard the shot. Roderick did not see where the gun was when it fired.

Allen testified that once he saw the pistol he asked David to let him see it. David handed it to him. Allen claimed he held it for "about ten seconds" and gave it back to David. According to Allen, David set the gun on the floor, with the clip beside it, and he (Allen) picked it up again. David took it back. David was in the doorway between the bedroom and bathroom. The pistol went off. Allen testified that he "was not sure where the gun was — whether it was in David's hand or on the floor when it went off." He further testified that he never saw David or Roderick put the clip in the pistol. Allen acknowledged that his father had a .38 pistol, that he had shot it with his father, and that his father had told him never to play with guns.

The testimony of David conforms to that of Roderick and Allen in the main. However, David testified that once he provided the clip to Roderick, Roderick pulled back the action, and thereafter inserted the clip about half way in. David acknowledges he likewise put the clip in half way. Upon demand, he handed the pistol to Allen. The clip was then lying on the dresser. Allen took the clip off the dresser and likewise inserted it about half way. David retrieved the pistol and the clip from Allen, and pointed the pistol at a mirror in the master bathroom. In turning to put the pistol away, David's shoulder hit the doorjamb and he fell backwards. In so doing, the pistol fired. The clip was not in the pistol when it fired. David admitted his finger was on the trigger when it fired.

The court accepts David's version of the circumstances. And the evidence is insufficient to determine which of the three boys by his act caused the bullet to be in the firing chamber of the pistol.

The bullet hit Allen at his left lower lip line, broke off an incisor tooth, and lodged in his neck near his spinal cord. Allen never lost consciousness. David and Roderick called 911 and an emergency vehicle promptly responded.

Medical expenses for Allen totalled approximately $21,000. He has a barely visible permanent scar on his lower left lip-line. It was determined medically prudent not to remove the .25 caliber bullet. The tooth lost was a permanent one, and future replacement is anticipated. Allen was hospitalized for three days and wore a brace for a month and one-half.

Allen's mother testified that his injury required him to refrain from sports activities and that he sometimes has bad dreams. Nonetheless, on cross-examination Allen's mother admitted that he played football in the street outside his home and rode his dirt bike without a helmet. When asked why she permitted such activities, she replied that she had told Allen not to do these activities, but twelve year olds often simply will not obey their parent's instructions.[1]

On September 21, 1994, Allen by his parent and next friend filed a Motion for Judgment against David Brown and his parents Joseph Brown and Terry Brown on the grounds of negligence. The Browns have asserted contributory negligence and/or assumption of risk by Allen Hughes as defenses.

The court heard the evidence during a day long trial. The court overruled a motion to strike at the close of the plaintiff's case, as it did as the conclusion of the trial.

### (1) *Liability of Parent Joseph Brown*[2]

A parent is not vicariously liable for his child's torts. In *Bell v. Hudgins,* 232 Va. 491, 493, 352 S.E.2d 332, 333 (1987), the Supreme Court stated that "the fact of paternity alone does not impose liability on parents for the torts of their minor child. *Hackley v. Robey,* 170 Va. 55, 65, 195 S.E. 689, 693 (1938)." See also 14A M.J., *Parent and Child,* § 21, pp. 204-205.

---

[1] It occurred to the court that with respect to obeying parental instructions, Allen's mother is in the same position as David's father.

[2] There is no evidence of liability of David Brown's mother, Terry, who had no control over the pistol or its storage whatsoever, and the claim against her is dismissed.

The issue with respect to Joseph Brown is not one of negligent entrustment, because Joseph Brown did not entrust the pistol to his son, David.[3] Rather, the issue is one of negligent storage, or more precisely, one of negligent failure to deny accessibility.

Plaintiff argues that the pistol was a "dangerous instrumentality." Cases which reach that conclusion are ones involving *loaded* pistols. See, *e.g. Jacobs v. Tyson*, 200 Ga. App. 123, 407 S.E.2d 62 (1991); *Glean v. Smith*, 116 Ga. App. 111, 156 S.E.2d 507 (1987); *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957); *Lopez v. Chewiwie*, 51 N.M. 421, 186 P.2d 512 (1947); *Hart v. Lewis*, 187 Okla. 394, 103 P.2d 65 (1940). A loaded gun is *inherently* dangerous because it may discharge by misadventure, defect, accident or negligence. An unloaded gun cannot discharge under any circumstances. Though in a criminal context, the Virginia Supreme Court in *Commonwealth v. Pannill*, 185 Va. 244, 254, 38 S.E.2d 457, 462 (1946), noted that a "*loaded* pistol" (emphasis supplied) may be a deadly weapon as a matter of law, though "a weapon may not be per se deadly, yet the vicious and cruel use of it may be the determinative factor in pronouncing it deadly." The distinction between a loaded and an unloaded gun as a dangerous instrumentality was inferentially made in *Huber v. Collins*, 38 Ohio L. Abs. 551, 50 N.E. 906, 907 (1942): "A loaded gun is a dangerous agency . . . ." See also, 57A Am. Jur. 2d, *Negligence*, § 322, n. 49, p. 334. The circumstances of this case require the court to make a factual determination as to whether an unloaded pistol is a dangerous instrumentality. The court finds it is not.

An annotation at 68 A.L.R.2d 782, § 7(b) (and supplements) dealing with the question of accessibility of firearms contains no Virginia cases, and no Virginia case was otherwise discovered by this court. However, there are instructive Virginia cases dealing with the reasonableness of the attempts to deny access to minors of items which are in fact dangerous instrumentalities.

In *Daughtery v. Hippichen*, 175 Va. 62, 7 S.E.2d 119 (1940), the defendant's storage of dynamite caps in an unlocked and unfenced tool shed, with the door open, and with knowledge that children played in and around the same was held negligent. A defendant in *Haywood v. South Hill*

---

[3] The Supreme Court has recognized that there may be "entrustment" other than by express permission. However, the evidence must show "a pattern of conduct from which permissive use may be implied." *Denby v. Davis*, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972). There is no such evidence in the instant case.

*Mfg. Co.,* 142 Va. 761, 128 S.E. 362 (1925), was negligent by leaving a charged electric wire within arms reach of a sidewalk along which he knew children passed. By contrast, in *Rieder v. Garfield Manor Corp.,* 164 Va. 192, 178 S.E. 677 (1935), the defendant's efforts to deny accessibility were held reasonable where a child broke into a locked shed and climbed onto a rafter and found blasting caps.

The case discovered most factually similar to the instant case was *Shaw v. Buice,* 130 Ga. App. 876, 204 S.E.2d 798 (1974), *cert. denied.* There Jimmy Buice, aged fifteen, took a .20 gauge shotgun from a closet in his home and loaded the same. His friend, Steve Ross, saw it lying down and pointing at Donald Shaw, aged twelve. According to Ross, he told Shaw to move away from the gun, and when Shaw did not, Ross picked up the gun and when he moved it, it discharged, the pellets hitting Donald Shaw. Shaw filed suit against Jimmy Buice, Steve Ross, and Jimmy's father, William Buice. The court held:

> Jimmy was required to keep all guns unloaded and to ask permission before using a gun. Jimmy did not seek permission because nobody was at home . . . the evidence reflects that Mr. Buice had instructed his son in the handling of firearms, had cautioned him to keep the shotgun, unloaded, in the closet, and to ask for permission to use it. He had no knowledge that his instructions had ever been disobeyed and he did not see the weapon in possession of either of the boys . . . The most that can be said about the case against the father is that he knew the shotgun was in a closet in his house for about a week prior to the incident . . . The court did not err in it its judgment granting the motion for summary judgment as to William Buice.

204 S.E.2d at 799-780, 130 Ga. App. at _____.[4]

In the instant case, Joseph Brown, David's father, had taken David to a firearms safety course, had directed his son to follow the standards learned in that course, had forbidden David to use the pistol out of his presence, had kept the clip and ammunition separated from the pistol itself, had hidden the pistol in a location so high that David needed a box to stand on to obtain access, and had no knowledge that David knew the location of the pistol. Further, there was no evidence that David had ever before

---

[4] The court reversed the trial court in its grant of summary judgment as to Jimmy Buice, holding the evidence raised a question of fact as to his negligence.

violated his father's admonitions or that David had ever before violated standards of firearm safety. While it is true that Joseph Brown could have obtained a locked gun cabinet, or a trigger locking device, or simply not ever purchased the pistol in the first place, Joseph Brown is not an insurer of the safety of Allen Hughes. The question before the court is whether or not Joseph Brown took reasonable precautions, under all the circumstances, to deny his son access to the pistol. The court finds that he did and accordingly judgment is granted in favor of Joseph Brown.

### (2) *Liability of David Brown*

Both David Brown and Allen Hughes were twelve years old on the date of the incident. Children between the ages of seven and fourteen are presumed to be incapable of either primary or contributory negligence. *Norfolk & Portsmouth RR. v. Barker,* 221 Va. 924, 275 S.E.2d 613 (1981); *Grant v. Mays,* 204 Va. 41, 129 S.E.2d 10 (1963). Thus, as measured by age alone, both David and Allen are in legal equipoise with respect of primary and contributory negligence.

To rebut the presumption against primary or contributory negligence, one must establish that a child is "in light of age, intelligence and experience . . . capable of understanding and appreciating the nature of the danger and the perils associated with his conduct." *Endicott v. Rich,* 232 Va. 150, 156, 348 S.E.2d 275, 279 (1986). A child's "responsibility is always to be measured according to his maturity and capacity, and determined by the circumstances of the case as shown by the evidence." *Va.-Car. Ry. Co. v. Clauson,* 111 Va. 313, 316, 68 S.E. 1003, 1004-1005 (1910).

The evidence shows that David understood and appreciated the danger associated with firearms. Indeed, he had attended a class specifically addressing that danger and setting forth standards to be employed in handling firearms. The evidence further shows that David violated a number of those standards. He did not check to see if the firearm was loaded by pulling back the action. He did not check to see if the safety was on. He placed his finger on the trigger when he did not intend to fire the pistol. And, in addition, he violated his father's admonition not to touch or use the pistol unless his father was present. Even though there is no evidence but that the firing was accidental, that is, it was an involuntary reflex by David on the trigger when he stumbled, the court nonetheless finds that the evidence of violation of safety standards by David is sufficient to rebut the presumption of non-negligence and to find David negligent.

### (3) *Contributory Negligence of Allen Hughes*

With the above finding we turn to the question of contributory negligence on the part of Allen. In arguing against a finding of Allen's contributory negligence, counsel for plaintiff on brief writes as follows:

> Indeed, the evidence is that any one of the three boys could have chambered the round since all three of them had the weapon in their hands at different points in time. If all the defendant can show is that any one of these two or three boys may have chambered the round, then they clearly have not met their burden of proof in regards to the issue of contributory negligence.

Plaintiff's Post-Trial Brief, p. 7.

This argument, of course, also constitutes an admission that the plaintiff has failed in proving negligence on the part of David Brown in chambering the round and an acknowledgment that Allen had handled the pistol.

Moreover, the evidence shows that Allen Hughes' father also owned a pistol, one of .38 caliber, that Allen had shot the same with his father, and that his father had discussed gun safety. Allen further admitted that his father had specifically told him "not to play with guns." Thus Allen likewise was "capable of understanding and appreciating the nature of the danger and the perils associated . . ." with firearms. *Endicott v. Rich, supra*, 232 Va. at 156, 348 S.E.2d at 279.

All three boys were doing that which each knew they should not and that which their respective fathers had forbidden. They were playing with a gun. And in the instant case it was not an innocent bystander who was injured, it was one of the boys playing with the gun.

In *Fein v. Wade*, 191 Va. 203, 209, 61 S.E.2d 29, 32 (1950), the Supreme Court stated:

> Any conduct or omission which would not have been indulged in by a reasonably careful person under the circumstances and conditions obtaining constitutes lack of prudence and amounts to negligence . . . If such conduct or omission efficiently contributes to the mishap, it bars recovery.

See also *Smith v. Virginia Electric & Power Co.*, 204 Va. 128, 133, 129 S.E.2d 655, 659 (1963); *V.M.J.I.*, vol. II, pp. 115-116, Instruction 6.050 (1994 ed.)

The court finds that Allen Hughes' conduct in the incident was likewise negligent and that that negligence was a proximate cause of his injury. Accordingly, judgment is entered in favor of David Brown.