| 95 | 593 |
| 97 | 241 |

| 95 | 593 |
| 98 | 541 |
| 98 | 543 |

| 95 | 593 |
| e99 | 339, |

| 95 | 593 |
| 109 | 791 |

## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### HARRISON & WIFE v. MANSON & OTHERS.

FEBRUARY 3, 1898.

Absent, Cardwell, J.

1. UNLAWFUL DETAINER—*Fraudulent Conveyance—Bill in Equity—Election of Remedies.*—A judgment against a defendant in an action of unlawful detainer is no bar to his right to institute a suit in chancery against the plaintiff to set aside, on the ground of fraud, the deed under which he claims the land in controversy. The doctrine of election of remedies has no application.

2. TRUSTS AND TRUSTEES—*Trustee Purchaser at His Own Sale.*—A trustee cannot purchase the trust subject at his own sale, either for himself or as agent for another. The sale will be set aside although the price obtained was fair, or the best to be had, and the motive of the trustee pure.

3. TRUSTS AND TRUSTEES—*Trustee Purchaser—Sale Set Aside—Measure of Relief to Trustee.*—Where a sale made by a trustee is set aside, at the instance of the grantors in the deed of trust, solely on the ground that the trust subject was purchased by the trustee at his own sale, the trustee is entitled to be reimbursed the amount paid by him, and may hold the legal title to the trust subject as security for the amount. He is entitled to interest, and the value of his permanent improvements, if any, and is to be charged with rents and profits.

Appeal from decrees of the Circuit Court of Brunswick county pronounced May 4, 1895, and December 18, 1895, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*H. R. Pollard* and *E. P. Buford*, for the appellants.

*George Mason*, for the appellees.

KEITH, P., delivered the opinion of the court.

Harrison and wife filed their bill in the Circuit Court of Brunswick county, asking to have a deed executed by Robert Turnbull, trustee, to R. W. Manson, dated December 20, 1894, annulled, upon the ground of fraud. The defendant answered, and, the cause coming on to be heard upon the pleadings and proof, the bill was dismissed, and it is before us upon appeal.

Robert Turnbull was trustee in a deed of trust given by Sallie E. Harrison, in which her husband united, to secure a debt due by bond to Mary L. Tillman for the sum of $685, with interest from December 1, 1888. Mrs. Tillman having died, her executrix, Mrs. J. D. Elam, became the owner of this debt, and instructed Turnbull, the trustee, to advertise the real estate conveyed to him for sale, unless the Harrisons could arrange for its payment before a given date. No such arrangement was made, and, on December 5, 1894, Turnbull, trustee, sold the land, and reported R. W. Manson as the purchaser at the price of $900 in cash, and, on the 20th of December following he executed a deed conveying this land to the purchaser.

At the time this land was sold there was a lien upon it subsequent to the deed of trust, in favor of H. S. Harrison, and also a balance due him by Mrs. Sallie E. Harrison on account of money advanced to pay interest upon the Tillman bond. H. S. Harrison was a kinsman and friend of Mrs. Sallie E. Harrison, and a brother-in-law of Robert Turnbull. He spent the night of December 4th at the house of Turnbull, and, in a conversation between them with reference to the sale of this land and the debt due by Mrs. Sallie E. Harrison to him, Turnbull, as he states in his answer, told him that he hoped the land would sell for enough to pay his debt, but that, in case it did not, he (Turnbull) would do his best to protect his interest. The land

was offered for sale on the 5th of December, when Mr. Elam bid enough to cover the principal and interest on the Tillman debt, and the land was cried by the auctioneer for some time at that bid, H. S. Harrison having in vain endeavored to induce others to bid for the property. Thereupon Turnbull, trustee, directed the auctioneer to cry a bid of $900, which was somewhat in excess of the amount necessary to satisfy the Tillman debt. Turnbull, before the land was cried off, being asked the name of the bidder by James H. Harrison, replied that "he did not as yet know." Subsequently R. W. Manson was declared to have been the purchaser at the price of $900, and, as has already been stated, a deed was made to him.

The contention in the bill is that Turnbull made the bid upon the land in his own interest, and that he himself was the purchaser, but the fact is, as shown by the evidence, that the bid was made by Turnbull in the interest of H. S. Harrison, in order to enable him, if possible, to realize something upon the debt due him by Sallie E. Harrison, which would otherwise be wholly lost.

At the January term of the County Court of Brunswick county, an action of unlawful detainer was instituted in the name of R. W. Manson against James H. and Sallie E. Harrison for the recovery of the possession of the land in controversy, they having declined to surrrender it. In this action the defendants pleaded "not guilty," and, upon the trial, judgment was rendered for the plaintiff. Harrison and wife had in the mean time, become so far informed of the true situation as to doubt whether Manson was the real purchaser. They presented a bill to the Circuit Court of Brunswick county praying for an injunction to the judgment requiring them to deliver possession of this property, but the injunction was refused. They made a second ineffectual attempt to enjoin that proceeding, and finally they filed the bill in this cause.

The defendant Turnbull contends that having pleaded "not guilty" to the action of unlawful detainer, was such an election

between the remedies open to the appellants as concludes them by the result of the trial upon that issue; that courts, both of law and equity, have jurisdiction to entertain controversies, and give relief in cases of fraud, and that an election to pursue a remedy in one forum precludes a resort to the other.

The action of unlawful detainer was brought in the name of Manson against Harrison and wife. The only question in issue there was as to the right of possession. Had the defendants successfully defended that suit, and had a judgment been rendered in their behalf, the deed from Turnbull to Manson would still have been upon record, and have constituted such a cloud upon the title as would have given jurisdiction to a court of equity in a suit for its removal. The issue, as well as the parties before the court in the unlawful detainer suit, was altogether different from the issue presented in the present controversy. Here we have the familiar case of *cestuis que trust* calling a trustee to account in a court of equity, and asking relief in that forum for an act done by him prejudicial to their interest, and to have a deed set aside by which their rights have been injuriously affected. We have no difficulty in holding that the jurisdiction of a court of chancery can, with propriety, be invoked in such a case.

On behalf of the appellants it is claimed that the sale which took place in December, 1894, was the culminating act in a deliberate and well-concerted scheme contrived by the trustee to defraud Mrs. Harrison, and to enable him to purchase at a sacrifice for his own benefit the property conveyed to him by her in trust to secure her creditors.

In order to make good this charge, the record in the chancery suit of Harrison against Walton's executors is vouched. That was a suit instituted by Sallie E. and James H. Harrison against Robert Turnbull as the executor of Emma R. Walton, the mother of Mrs. Harrison, for the settlement of Mrs. Walton's estate. It was, in its inception at least, a friendly suit, and Turnbull appeared as counsel for the plaintiff, and was himself,

as the executor of the will of Mrs. Walton, the defendant. The appellants charge that in the conduct of this suit Turnbull was guilty of many acts of impropriety; that he purchased claims against the estate of Mrs. Walton, when it was his duty to defend her estate against all claims asserted against it; and that in particular he preferred against the estate of his decedent a claim of Mrs. Harrison against her mother, who had been her guardian, for a sum of money greatly in excess of what was actually due, having failed to insist upon a credit to which the guardian was entitled, and which appeared of record; that these omissions of duty and positive acts of dereliction on the part of Turnbull were parts of the design which he had formed to render a sale of the real estate of which Mrs. Walton had died seised necessary.

There was a decree for a sale, and at that sale Mrs. Harrison became the purchaser, paying the greater part of the purchase money with the decree which had been rendered in her favor against her mother's estate, but the balance due, over and above that decree, with some other debts which she had to pay, was the cause of her subsequently borrowing money from Mrs. Tillman, and giving the deed of trust to secure it, for default in the payment of which her land was ultimately sold.

The idea that Turnbull, at the time of the suit of Harrison against Walton's executor, had conceived a fraud and conducted that litigation with a view to its perpetration, is very far-fetched, in view of the fact that the demand, which it is now insisted was fraudulently preferred by Turnbull, the attorney, against the estate of which he was the executor, was success-fully asserted in behalf of Harrison and wife, who now charge fraud upon him.

Without prolonging this opinion by a further investigation of the record in that suit, or of the circumstances relied upon by the appellants to fasten actual fraud upon Robert Turnbull, it must suffice to say that there is not a particle of evidence which has even the tendency to prove actual fraud, or moral turpitude.

But while that is true, the sale which he made to R. W. Manson for the benefit of H. S. Harrison cannot be allowed to stand. It may be, and doubtless is, true that no better bid could have been obtained for the property sold, and that the price, under all the circumstances, was a fair one. It may be conceded that Mr. Turnbull was inspired by no desire to injure Mrs. Harrison, nor, indeed, by any improper motive, and that the land would have passed to the representatives of the Tillman debt had he not interposed the bid at which it was ultimately cried off. His motive doubtless was to protect H. S. Harrison, who had become involved in the transaction in his efforts to aid his kinswoman; but to all these considerations the eyes of the court are closed by an inexorable principle of public policy. Turnbull was the trustee for Mrs. Sallie E. Harrison, to sell the land in controversy, and he could not, so long as that relation existed, become the purchaser himself, or purchase as the agent for another.

Says Lord Eldon in *Ex Parte James,* 8 Vesey 345: "This doctrine as to purchases by trustees, assignees, and persons having a confidential character, rests much more upon general principle than upon the circumstances of any individual case. It rests upon this, that the purchase is not permitted in any case, however honest the circumstances; the general interests of justice requiring it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth in much the greater number of cases." See, also, *Buckels* v. *Lafferty,* 2 Rob. 292; *Howery* v. *Helms,* 20 Gratt. 1.

We are of opinion that the Circuit Court erred in refusing to annul the deed from Robert Turnbull to Manson, and for this cause its decree must be reversed.

It remains to consider what measure of relief should be afforded the parties to this transaction as a consequence of the conclusion just reached.

Turnbull paid out of his own money the debt due the Tillman estate, and it is contended by appellants that he is not

entitled to be reimbursed; that having been guilty, as they say, of a fraud, he cannot hold the land as a security for the money advanced by him in the execution of a fraudulent transaction. They claim that to be reimbursed he must show himself entitled either upon the principles of subrogation, or of a resulting trust, and that these equitable principles will not be called into activity in aid of one who has acted in bad faith.

In *Almond* v. *Wilson*, 75 Va. 613, Judge Staples declares that "the law does not so far countenance fraudulent transactions as to protect the perpetrator to the extent of his investment." That is true, and if this were a case of actual fraud, involving moral turpitude, such as that in which Judge Staples used the language just quoted, and were Turnbull here seeking the active aid of a court of equity to protect him from its consequences, he would not be heard; but the case with which we are dealing is wholly different. Turnbull is not seeking to have a trust declared in his favor, or to be subrogated to the rights of any one. The appellants have come into a court of equity, and have demanded that the deed which he made should be annulled; that prayer has been granted, and the effect of annulling the deed from Turnbull to Manson is to restore the legal title to Turnbull. To require him now, when guilty of no actual fraud, to surrender this property to the appellants, discharged of the lien which rested upon it, would be, in the name of equity, to perpetrate a greater wrong than that of which the appellants complain, for it is doubtful whether they have suffered any real injury whatever. A transaction, even when actually fraudulent, is voidable, and if he, at whose election a sale may be avoided for fraud, knowingly receives and enjoys the benefit of it, he is held to have affirmed and ratified it. If, therefore, the situation had been such that the $900 bid for this land had been paid directly to Mrs. Harrison, and she had received it with full knowledge of the circumstances attending it, she would have been bound by it, and could not have disaffirmed it; but if it goes to the payment of her debt,

she no less receives the benefit of it than if it had been paid to her in person.

In *Buckels* v. *Lafferty, supra,* a testator directed lands to be sold. The administratrix, with will annexed, appointed an agent who did the business of the administration, and received the commissions. She was old, and had great confidence in him, and he acted in a great degree without her supervision, and practically conducted the administration without control. He purchased a part of the real estate from her, and, upon a bill filed by those interested, it was held that "a purchase by such an agent is in substance no better than a purchase from himself"; but the court, being of opinion that the evidence was insufficient to fasten upon the appellant the charge of actual fraud or covin in the purchase of the land, set aside the sale, and directed that an account be taken, charging the purchaser with the profits of the land, or with a fair annual rent therefor, crediting him, first, with his payments and interest on the same, and, secondly, with all his substantial and permanent improvements.

In *Howery* v. *Helms, supra,* Howery was the commissioner to sell certain real estate. He offered it for sale, and it was reported as sold to one John W. Helms, when in truth Howery was himself the purchaser. A bill having been filed by those interested, who had not ratified the transaction, it was set aside, Judge Joynes delivering the opinion, and saying, "that such a transaction was fraudulent in contemplation of law; and that any party interested was entitled to have the sale set aside and annulled, as, of course, without proof of actual fraud"; but, notwithstanding this conduct of Howery, which is denounced by the court as "illegal" and "fraudulent," the court, while setting aside the sale, directed that the bonds of the county of Floyd, in which the money arising from the sale had, by order of the court, been invested by the commissioner, in the name and for the benefit of certain non-resident parties, should be surrendered to Howery as his property, and the obligees be required, if desired, to assign them to him without recourse.

In that case we see that the court took affirmative action in order to restore to Howery the money paid by him in a transaction which the court had set aside as fraudulent.

We are of opinion, therefore, that while the deed from Turnbull to Manson should be annulled, Turnbull should be protected to the extent of permitting him to hold the legal title until the appellants, or some one for them, shall pay to him the amount of the principal and interest advanced by him upon the Tillman bond, and such sum as may have been paid by him upon the debt due from Sallie E. to H. S. Harrison; that an account be taken, if one should be requested by any party in interest, of the rents, issues, and profits of the land in controversy since January, 1895, and of any permanent improvements made upon it since that date, and when these accounts have been settled, that the property be sold, if necessary, and the proceeds applied in accordance with the principles above stated.

This result gives to appellants, after a long, costly, and acrimonious litigation, the same measure of relief offered them by Robert Turnbull before the decree appealed from was rendered.

*Reversed.*