JUSTICE McCLANAHAN, concurring in part and dissenting in part.
 

 While I agree with the majority that the circuit court did not err in considering the
 pleadings filed in the general district court, I disagree with the majority's conclusion that the general district court was divested of subject matter jurisdiction to try the unlawful detainer action. Furthermore, because the Parrishes' allegations of a breach of the deed of trust, even if true, would not entitle the Parrishes to possession of the property in an unlawful detainer action, I would affirm the judgment of the circuit court.
 

 A. Subject Matter Jurisdiction
 

 In a result-oriented approach, the majority creates, and then resolves, a question of subject matter jurisdiction that has heretofore never existed. The majority accomplishes this result by
 disregarding traditional principles of title to deprive the general district court of jurisdiction expressly granted to it by the General Assembly. The majority eliminates right of possession as an element of title and crafts an entirely new, albeit undefined, concept of "title" along with a new procedure for adjudicating this vague right.
 

 At the outset, the majority's approach is premised upon a fundamental misunderstanding of real property law and the nature of an unlawful detainer action. In particular, the majority opinion fails to distinguish between right of possession-a degree of title to real property that is subject to adjudication in an unlawful detainer action-and complete title, which is not at issue in an unlawful detainer action. Well-settled principles of title establish that right of possession is an element or degree of title in and of itself that does not depend on good and complete title.
 
 [1]
 
 "The question to be determined in [an unlawful detainer] case is the right of possession, and to this end the question of the complete title is not the question to be determined; and to maintain the action the plaintiff need not have the complete title." Pannill v. Coles , 81 Va. (6 Hans.) 380, 385 (1886). In Pannill , the Court explained that while an unlawful detainer action does not involve "complete title," it is an action "concerning title" because it determines "any element of complete
 title," i.e., right of possession. Id. at 385-86.
 
 [2]
 
 The Court clarified that despite "expressions" in previous cases "in which possession seems to have been contrasted with the title," a controversy concerning right of possession is a controversy concerning title. Id. ; see also Seitz v. Federal National Mortgage Ass'n ,
 
 909 F.Supp.2d 490
 
 , 499 (E.D. Va. 2012) ("Thus, generally speaking, in an unlawful detainer action, the court is largely confined to a determination within Blackstone's first and second 'degrees' of title."); In re Cherokee Corp. ,
 
 222 B.R. 281
 
 , 286 (Bankr. E.D. Va. 1998) ("The issue of proper title is separate and independent of a determination of
 lawful possession" and is "irrelevant to a claim of unlawful detainer.").
 

 The General Assembly has expressly conferred jurisdiction upon general district courts to try right of possession in unlawful detainer actions. See Code § 16.1-77(3) and Code § 8.01-126.
 
 [3]
 
 Following the principles discussed in Pannill, right of possession is a degree of title that presents an issue for resolution independent of any issue of good and complete title. Therefore, upon simple application of these principles, it is clear that the general district court had subject matter jurisdiction to determine whether Fannie Mae was "entitled to the possession" of the property without regard to whether Fannie Mae had good and complete title. Code § 8.01-126(A).
 
 [4]
 
 The Parrishes' allegations of a breach of the deed of
 trust, while they may very well assert a cloud upon Fannie Mae's good and complete title, did not divest the general district court of jurisdiction because right of possession does not depend on good and complete title.
 
 [5]
 

 Despite the clear grant of subject matter jurisdiction to the general district court to try right of possession and settled law establishing that right of possession does not depend on complete and good title, the majority creates a question of subject matter jurisdiction by eliminating right of possession as a distinct element of title separate from complete title and adopting a new one-dimensional, yet undefined, concept of title from which right of possession flows.
 
 [6]
 
 Having abandoned
 the traditional elements of title, it is hardly surprising that the majority finds itself in a "conundrum." Under the majority's nebulous concept of title, the
 broad principle that general district courts cannot try title takes on a novel meaning and leads to the absurd result that general district courts are no longer empowered to adjudicate right of possession whenever a dispute arises over "title"-as that term is understood by the majority.
 
 [7]
 

 Not only has the majority abandoned settled principles of real property law, it has practically eliminated the availability of the summary proceeding of unlawful detainer to purchasers of property at foreclosure sales. The majority's new procedure for obtaining possession operates to deprive record owners of possession until disputes over "title" are adjudicated after the record owner has sought the "appropriate" remedy in circuit court.
 
 [8]
 
 Specifically, under the majority's holding, the Parrishes are entitled to retain possession of the property, without any obligation of payment, while record ownership, and the corresponding obligations of record ownership, including payment of taxes, remain with Fannie Mae. The majority's new procedure, which appears to involve determination of something more than right of possession but something less than good and complete title, is unnecessary since avenues already exist for claims of a wrongful conveyance of property, e.g., actions to set aside deeds.
 
 [9]
 
 Yet, under the majority's
 holding, the Parrishes need not seek to set aside the deed but may, nevertheless, deny possession to the record owner merely upon the allegations that they have grounds to set aside the deed if they were so inclined, thereby ousting the general district court of its jurisdiction.
 

 In sum, I cannot join the majority's effort to implement a policy in Virginia that effectively prevents a class of record property owners from obtaining possession of property via a summary proceeding that has been in place for centuries.
 
 [10]
 
 If it is to be the policy of Virginia that there should be limitations on the right of purchasers at foreclosure sales to obtain possession of the property, then the adoption of such a policy and specific limitations on the right of possession should be accomplished by an act of the General Assembly, not through judicial pronouncement
 by this Court. See Bevel v. Commonwealth ,
 
 282 Va. 468
 
 , 479-80,
 
 717 S.E.2d 789
 
 , 795 (2011) ; Hackley v. Robey ,
 
 170 Va. 55
 
 , 66,
 
 195 S.E. 689
 
 , 693 (1938). "The public policy of the Commonwealth is determined by the General Assembly [because] it is the responsibility of the legislature, and not the judiciary, ... to strike the appropriate balance between competing interests." Uniwest Constr., Inc. v. Amtech Elevator Servs. ,
 
 280 Va. 428
 
 , 440,
 
 699 S.E.2d 223
 
 , 229 (2010) (internal quotation marks and citation omitted).
 

 B. Present Right of Possession
 

 Since I would hold that the general district court did have subject matter jurisdiction over the unlawful detainer action, I would proceed to determine whether the circuit court erred in granting summary judgment in favor of Fannie Mae.
 

 In my view, the circuit court did not err in concluding that Fannie Mae was entitled to possession, since proof of violation of the terms of the deed of trust would not entitle the Parrishes to possession of the property in this action. This Court has stated that "if trustees invested with the legal title to an estate conveyed it to another in plain violation of the trust, and even by a deed which on
 its face shows such violation, the title of the grantee is good at law, and resort must be had to a court of equity to set aside the deed." Carrington v. Goddin ,
 
 54 Va. 587
 
 , 601 (1857). Applying that principle here, the trustee's deed is valid and establishes Fannie Mae's right of possession unless it is set aside by a court hearing an equitable cause of action for such relief. Since that remedy is not available in an unlawful detainer action, which only determines right of possession, the Parrishes' allegations of a breach of the deed of trust are not relevant to a determination of the right of possession.
 
 [11]
 

 For example, the United States District Court for the Eastern District of Virginia held that where a foreclosure is invalidated, the purchaser at foreclosure is nevertheless in lawful possession of the property from the time of purchase until the date the sale is invalidated. In re Cherokee Corp. ,
 
 222 B.R. 281
 
 (Bankr. E.D. Va. 1998).
 

 Case law is unclear on the issue of whether the purchaser of property at a trustee's auction is vested with proper title during the period before the sale is later invalidated because it was not properly conducted. However, proper title is irrelevant to a claim of unlawful detainer because, lawful possession of property is the only issue to be determined in a claim for unlawful detainer.
 

 We conclude that by virtue of the trustee's sale [the creditor] had a right to possess the property until the sale was invalidated on January 20, 1995. [Debtor] has not proven that [creditor] unlawfully held the property as against [debtor] because [creditor] rightfully possessed the property.
 

 Id. at 286
 
 .
 

 In sum, Fannie Mae presented evidence of its right to possession by virtue of the trustee's deed. The Parrishes admit that the property was sold to Fannie Mae and that the deed of conveyance
 is recorded in the land records. And there is no claim by the Parrishes that the deed is facially invalid. Because the Parrishes' allegations of a violation of the deed of trust, even if true, would not deprive Fannie Mae of its right to possession, the circuit court did not err in awarding Fannie Mae possession of the property.
 

 C. Conclusion
 

 For the foregoing reasons, I would affirm the judgment of the circuit court.
 

 I fully agree with the majority's analysis with regard to the circuit court's consideration of the pleadings filed in the general district court.
 

 That is not to say that these are the only forms of trying title; undoubtedly other forms exist. However, at present, these are the only forms of trying title that research indicates that our jurisprudence has recognized.
 

 It is worth noting that, absent Code § 8.01-130, there is very little difference between ejectment and unlawful detainer. Indeed, both actions are "founded on the plaintiff's right of possession at the time of the institution of the action." Williamson v. Paxton,
 
 59 Va. 475
 
 , 505 (1868) accord Pettit v. Cowherd, 83 Va. (8 Hans.) 20, 25,
 
 1 S.E. 392
 
 , 395 (1887). The only actual significant difference between the two actions is that an unlawful detainer action lacks the preclusive effect of an ejectment action due to Code § 8.01-130.
 

 It should be noted that Code § 8.01-130 does not distinguish between unlawful detainer actions brought in the general district court and unlawful detainer actions brought in the circuit court. Thus, it is clear that the General Assembly did not intend for an unlawful detainer action to try title, regardless of whether the action is brought in the general district court or the circuit court. Indeed, the fact that Code § 8.01-130 applies equally to an unlawful detainer action filed in either court indicates that the General Assembly intended for such actions to be treated the same, regardless of what court the action is filed in or what defense is raised.
 

 That is not to say, however, that the General Assembly intended to confer upon general district courts subject matter jurisdiction to try title. Indeed, there would be no need to confer such jurisdiction because, as I have repeatedly stated, unlawful detainer actions only concern the right of possession and do not try title.
 

 Further demonstrating the seeming imbalance of the majority's approach, the majority seeks to foreclose any collateral attacks on previous unlawful detainer actions where defendants raised a question concerning title. In holding that these decisions are merely voidable, the majority presumes that the general district court's decision was based on a finding that the defendant had not raised a bona fide question of title. Rarely will we have any way of knowing the basis for the general district court's ruling. Indeed, it is not beyond of the realm of possibility that the defendant raised a bona fide question of title but lost because the general district court made a ruling on the merits, notwithstanding the fact that it had no jurisdiction to do so. The only way to determine the basis for the general district court's ruling is to reopen the case and allow a collateral attack.
 

 Although it is clear that the majority has abandoned the traditional elements of title recognized in Pannill, it is not clear what the majority means when it refers to the term "title." Since the majority has concluded that a general district court must dismiss an unlawful detainer action that involves a bona fide claim of title, the majority seems to equate its concept of title with the degree of good and complete title recognized under traditional property law principles.
 

 The majority's flawed understanding of title and the nature of an unlawful detainer action is illustrated by its suggestion that the circuit court could adjudicate right of possession in an unlawful detainer action brought under Code § 8.01-124 even when the general district court could not under Code § 8.01-126. But "judgment in an action of unlawful detainer settles nothing, even as between the parties, in regard to [good and complete] title." Brown v. Lawson,
 
 86 Va. 284
 
 , 286,
 
 9 S.E. 1014
 
 , 1015 (1889). This is true regardless of where the action originates. Fannie Mae already holds the deed to the property. Thus, it is not apparent what the "appropriate remedy" for Fannie Mae to seek in circuit court would be.
 

 Parties who believe they are aggrieved by a wrongful conveyance of property may file an action seeking to set aside the conveyance and enjoin prosecution of an unlawful detainer action. See e.g., Hamilton v. Stephenson,
 
 106 Va. 77
 
 ,
 
 55 S.E. 577
 
 (1906) (action against trustee and purchaser to set aside sale and enjoin prosecution of unlawful detainer); Wohlford v. Wohlford,
 
 121 Va. 699
 
 ,
 
 93 S.E. 629
 
 (1917) (action to set aside codicil to will and deed and enjoin prosecution of unlawful detainer); see also Whitlow v. Mountain Trust Bank,
 
 215 Va. 149
 
 ,
 
 207 S.E.2d 837
 
 (1974) (action to set aside foreclosure sale). Even where a party disputes the right of possession in an unlawful detainer case and loses, that party is not precluded from bringing an action to have the deed aned. Harrison v. Manson,
 
 95 Va. 593
 
 , 595-96,
 
 29 S.E. 420
 
 , 421 (1898).
 

 By altering the definition of title and relegating right of possession to nothing more than an ambiguous notion, the majority has effectively eliminated the usefulness of this summary proceeding outside the context of actions between landlords and tenants.
 

 As noted previously, the Parrishes could have filed an action to set aside the conveyance after the foreclosure sale if they believed the conveyance was unlawful. In fact, the record reflects that they ultimately did file an action seeking rescission of the trustee's deed after Fannie Mae moved for summary judgment in the unlawful detainer action when it was on appeal to the circuit court.