UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia

MICHAEL R. AGNEW, ET AL.

MEMORANDUM OPINION[*] BY
v.　　　Record No. 0516-23-1　　　JUDGE GLEN A. HUFF
JULY 30, 2024

1309 TAYLORS POINT ROAD, LLC

FROM THE CIRCUIT COURT OF VIRGINIA BEACH
Tanya Bullock, Judge

David C. Reinhardt[1] (Steven S. Biss; Law Office of Steven S. Biss,
on brief), for appellants.

John F. Sawyer (Wolcott Rivers Gates, on brief), for appellee.

Michael R. Agnew and Barbara Agnew ("appellants") appeal a circuit court judgment

awarding appellee 1309 Taylors Point Road, LLC ("TPR") possession of the disputed property

and unpaid rent in an unlawful detainer action. Finding no error, this Court affirms the circuit

court's judgment.

BACKGROUND[2]

Although the scope of this appeal is limited to the circuit court's ruling on TPR's

unlawful detainer claim, this Court first notes that the underlying property in dispute—1309

Taylors Point Road ("the Property") in Virginia Beach, Virginia—has been the subject of

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Mr. Reinhardt, of Reinhardt Vandenbrook, PLLC, took over this case from Mr. Biss's practice. He participated in oral argument via WebEx.

[2] "According to well settled principles, we recite the relevant facts in the light most favorable to [TPR], . . . the prevailing party in the circuit court." *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 84 (2008).

extensive litigation involving appellants in various courts since at least 2000.[3]  As relevant to this appeal, the Circuit Court for the City of Richmond (the "Richmond Circuit Court") entered a decree in April 2014 ordering the Property be sold via public auction to the highest bidder.[4]  Following other litigation by appellants, including a federal bankruptcy case, the Property was eventually sold on March 9, 2021, at public auction, to "Jayne A. Foster-Fair for FRP, LLC" for $1,800,000.  Jayne A. Foster-Fair is the owner and a "managing member" of FRP, LLC ("FRP").

The special commissioner's deed conveying the Property to "Jayne A. Foster-Fair for FRP, LLC" was recorded on April 14, 2022.  On May 25, 2022, before the Richmond Circuit Court issued its final decree confirming the judicial sale of the Property, FRP executed a deed of bargain and sale conveying the Property to TPR.[5]  TPR recorded that deed on May 27, 2022.

Subsequently, appellants filed a motion in the Richmond Circuit Court on November 15, 2021, seeking to set aside the judicial sale to FRP based on a claim of fraud.[6]  Following a

---

[3] *See Michael R. Agnew, et al. v. United Leasing Corp.*, 80 Va. App. 612 (2024) (rendering judgment under Record No. 1724-22-2 on appellants' direct challenge to the judicial sale of 1309 Taylor's Point Road); *Barbara M. Agnew, et al. v. United Leasing Corp.*, 680 F. App'x 149 (4th Cir. 2017) (affirming appellant's confessed judgment and forbearance agreement).

[4] The Richmond Circuit Court appointed a special commissioner, Richard J. Knapp, to conduct the sale.

[5] FRP owns a majority interest in TPR.  The deed was signed by Jayne A. Foster-Fair as "Manager of FRP, LLC."

[6] In their initial opposition to confirmation of the sale, appellants argued that the sale was void because the buyer, "Jayne A. Foster-Fair for FRP, LLC," did not exist as a registered limited liability company in Virginia at the time of the sale and that "Future Retirement Plan, LLC," the purported full name of FRP, had failed to file a fictitious name statement.  The Richmond Circuit Court found otherwise and entered an "Order and Decree of Sale and Confirmation" on July 22, 2021, that "accepted, approved, ratified, and confirmed in all respects" the sale of the Property to FRP for $1,800,000.
In their November 2021 motion to set aside the sale, appellants alleged that Special Commissioner Knapp had fraudulently concealed the fact that FRP had not paid the entire purchase price within the required 21 days of the court's confirmation of the sale.

hearing on January 31, 2022, the Richmond Circuit Court found that appellants had failed to sufficiently allege grounds that would justify setting aside the confirmed judicial sale. It entered a final decree to that effect on June 1, 2022.[7] Appellants directly challenged that judgment and the validity of the judicial sale in a separate appeal to this Court under Record No. 1724-22-2. *See Michael R. Agnew, et al. v. United Leasing Corp.*, 80 Va. App. 612 (2024). In a unanimous decision, another panel of this Court rejected appellants' arguments and affirmed the Richmond Circuit Court's findings, including its confirmation of the judicial sale to FRP. *Id.*

Unlawful Detainer Action

On August 23, 2022, TPR issued appellants a "Notice to Vacate" the Property. This notice included a copy of the Richmond Circuit Court's June 1, 2022 final decree. Despite having received the notice, appellants refused to vacate the Property. Consequently, TPR filed this unlawful detainer action against appellants on September 15, 2022, in the Virginia Beach General District Court (the "GDC").

In its bill of particulars, TPR expressly alleged that there was "no good faith dispute regarding the ownership of the Property." Appellants responded by filing "Grounds of Defense and Affirmative Defenses" in which they raised two "affirmative defenses": (a) that TPR was not entitled to possess the Property and thus lacked standing; and (b) that TPR's claims were barred by its fraud, FRP's fraud, "and unclean hands." Appellants elaborated on those claims in their line-by-line responses—the "grounds of defense"—to TPR's bill of particulars. Specifically, appellants alleged that: (i) the special commissioner, Richard J. Knapp, had fraudulently executed the deed to FRP without first receiving the remainder of the purchase price; (ii) "Future

_____

[7] In its final decree, the Richmond Circuit Court found that FRP had paid Special Commissioner Knapp a total of $1,962,000, a combination of the $1,800,000 purchase price for the Property and the $162,000 buyer's commission. The special commissioner's deed conveying the Property to FRP, which is part of the record on this appeal, expressly references receipt of the full purchase price.

- 3 -

Retirement Plan, LLC" did not legally exist when the deed was executed; (iii) Jayne A. Foster-Fair, as a "trustee in liquidation," lacked "legal right or authority" to conduct business on behalf of FRP; and (iv) FRP had not properly registered a fictitious name to legally conduct business as "FRP."[8]

The GDC held a hearing on TPR's unlawful detainer claim at which TPR entered several documents into evidence, including a copy of the June 2022 final decree from the Richmond Circuit Court, which confirmed the judicial sale of the Property to FRP, "thereby conveying ownership of the [P]roperty and exclusive right of possession" to FRP. TPR also entered into evidence the special commissioner's August 2021 deed conveying the Property to FRP and the May 2022 deed conveying the Property from FRP to TPR.[9]

The GDC granted TPR immediate possession of the Property as well as $40,000 in damages. Appellants appealed to the Circuit Court for the City of Virginia Beach (the "circuit court"). During the circuit court proceedings on March 23, 2023, TPR entered into evidence the same documents presented to the GDC: namely, the June 2022 final decree from the Richmond Circuit Court and the two deeds conveying the Property first from Special Commissioner Knapp to FRP and then from FRP to TPR. TPR's real estate expert testified, *inter alia*, to the public accessibility and reliability of those documents. TPR also entered documents from the Virginia State Corporation Commission (the "SCC") showing the valid existence of FRP at the time it purchased the Property and when it later conveyed the Property to TPR.[10]

---

[8] Each of those arguments were also raised, and rejected, in appellants' direct appeal of the Richmond Circuit Court's June 2022 final decree, under Record No. 1724-22-2. *See Agnew*, 80 Va. App. 612.

[9] Appellants do not contest that both deeds were properly recorded.

[10] Plaintiff's Exhibit 3 is a certificate of fact from the SCC certifying that "Future Retirement Plan, LLC [wa]s duly organized as a Limited Liability Company . . . on March 18, 2011" and that it existed on March 6, 2022. Plaintiff's Exhibit 4 is an order issued by the SCC

Appellants then attempted to admit a series of documents related to the prior proceedings in Richmond, but the circuit court deemed them irrelevant to the issue of possession in the unlawful detainer action.[11] The circuit court was, nevertheless, aware of the extensive procedural history regarding the Property, including the then-pending appeal from the Richmond Circuit Court in which appellants directly challenged the validity of FRP's title to the Property. In ruling on TPR's unlawful detainer claim, however, the circuit court expressly avoided making any findings on the issue of title, stating only that it was "not in a position to determine that the final decree [from the Richmond Circuit Court] [wa]s void."[12]

Based on the admitted documents, the testimony presented ore tenus, and the parties' arguments regarding the issue of possession, the circuit court determined that TPR had "a possessory interest in the [P]roperty" and that appellants were "tenant[s] at sufferance" who owed TPR "the fair market rental value." Accordingly, in its order issued that same day—March

---

on April 17, 2021, reinstating "Future Retirement Plan, LLC, [as] a Virginia limited liability company" after its temporary lapse in registration since June 30, 2018. Lastly, Plaintiff's Exhibit 5 is a copy of a "Certificate of Assumed or Fictitious Name" that Jayne A. Foster-Fair filed on May 24, 2012, in the clerk's office for James City County, acknowledging that "FRP" is the assumed/fictitious name of the business owned by "Future Retirement Plan, LLC."

[11] Those documents included the Richmond Circuit Court's April 25, 2014 "Decree" ordering the judicial sale; the Richmond Circuit Court's December 1, 2020 "Second Amended Decree," which appellants claim the special commissioner fraudulently violated; the Richmond Circuit Court's June 30, 2021 "Opinion and Order," which determined the legal existence of FRP and its fictitious name at the time of the judicial sale; and the Richmond Circuit Court's July 22, 2021 "Order and Decree of Sale and Confirmation." Despite refusing to accept appellants' documents into evidence, the circuit court permitted them to be made part of the record on appeal.

[12] In weighing the evidence of possessory interest, the circuit court gave considerable weight to the Richmond Circuit Court's final decree: "I don't have any evidence that it's been challenged [or] . . . that [the] decree has been overruled. So the Court does find [TPR] ha[s] possessory interest. As such, the Court finds that they are entitled to possession."

23, 2023—the circuit court granted TPR immediate possession of the Property and assessed $89,060 in holdover rent for a period of ten months against appellants.[13] This appeal followed.

ANALYSIS

On appeal, appellants claim the circuit court erred in finding that TPR had a right to possession of the Property. In support of that claim, appellants argue only that TPR did not receive and could not have received valid title from FRP because FRP itself, prior to conveying the Property to TPR, did not obtain valid title from the 2021 judicial sale. Appellants thus attempt to challenge the validity of TPR's title by collaterally attacking the judgment of the Richmond Circuit Court, which confirmed the sale to FRP and rejected the same claims appellants raise again here.[14]

---

[13] Neither party challenges the circuit court's monetary determinations or requests additional reimbursement for costs resulting from this appeal. Accordingly, this Court does not remand the case for the calculation of additional damages. Nevertheless, this Court acknowledges the likelihood that TPR will incur additional costs resulting from appellants unlawful retention of the Property before final resolution of this case. Such expected costs include further holdover rent accrued during the pendency of this appeal and during such time before TPR successfully evicts appellants. This Court thus notes that the narrow holding here in no way precludes TPR from bringing future claims against appellants for other costs or damage to the Property caused by appellants.

[14] TPR counterargues that appellants should be barred from relitigating these exact same issues under the doctrine of collateral estoppel, more commonly referred to as issue preclusion. Virginia courts recognize issue preclusion and its cousin claim preclusion as two different forms of res judicata, under which "a final personal judgment" may affect "subsequent litigation" on the same claim or issue decided by the previous judgment. *Lee v. Spoden*, 290 Va. 235, 245 (2015); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'").

Although distinct in their effect, both issue preclusion and claim preclusion rely upon the existence of a "final judgment." *See Scales v. Lewis*, 261 Va. 379, 382 (2001) (precluding "parties from relitigating the same cause of action when a valid, final judgment was previously entered" and precluding "parties to a prior action from litigating in a subsequent action any factual issue that was actually litigated and essential to a valid, final judgment in the prior actions"). As to what constitutes a "final" judgment for purposes of issue preclusion, this Court is bound by the Supreme Court's ruling in *Faison v. Hudson*, 243 Va. 413 (1993). There, the Court unequivocally held that "a judgment is not final for purposes of *res judicata* or collateral estoppel when it is being appealed or when the time limits fixed for perfecting the appeal have

- 6 -

Because appellants' title challenge was insufficiently pled in the GDC, however, the circuit court did not err in limiting its ruling in the unlawful detainer case to the issue of possession, rather than title. *See Parrish v. Fannie Mae*, 292 Va. 44, 49 (2016). Viewing the record in that light, this Court holds that the circuit court did not err in granting TPR's motion for summary judgment where TPR established a prima facie case of its right to possession and appellants did not provide any contradictory evidence. *See Neal v. Sec'y of the Dep't of Veterans Affairs*, 79 Va. App. 1, 9 (2023) ("In Virginia, summary judgment is only available when there is no 'dispute of material facts' and the moving party is entitled to judgment as a matter of law." (quoting Rule 3:20)). Accordingly, this Court affirms the circuit court's judgment on those narrow grounds and declines to address the merits of appellants' arguments that collaterally attack the validity of FRP's title and the 2021 judicial sale.[15]

<u>Jurisdictional Limitations for Unlawful Detainer Claims</u>

"Unlawful detainer is an action against a defendant who lawfully entered into possession of real property but whose right to lawful possession has since expired." *Parrish*, 292 Va. at 50. "It is brought by a plaintiff lawfully entitled to possession at the time of suit, which the defendant is then unlawfully withholding." *Id.* "The sole issue to be determined by a court in an unlawful

---

not yet expired." *Id.* at 419. Therefore, although the doctrine of res judicata rests on sound policy goals, it is nevertheless inapplicable in this case where the Richmond Circuit Court's judgment is not yet "final" under the rule articulated by the Supreme Court.

[15] Under the doctrine of judicial restraint, this Court has "an 'obligation to decide cases on the best and narrowest grounds available.'" *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023) (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022)). Accordingly, this Court resolves the case at hand based on the principles laid out in *Parrish*. 292 Va. 44.

Furthermore, the merits of appellants' claims regarding title have already been resolved by this Court's published opinion for Record No. 1724-22-2, *Agnew*, 80 Va. App. 612. Pursuant to the inter-panel accord doctrine, this Court is bound by the rulings in that case. *See Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003) ("The decision of one panel [of our Court] 'becomes a predicate for application of the doctrine of *stare decisis*' and cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." (quoting *Johnson v. Commonwealth*, 252 Va. 425, 430 (1996))).

detainer action is whether the plaintiff, who is presently out of possession, has a superior right of possession to the defendant." *Neal*, 79 Va. App. at 6.

As "creations of the General Assembly," Virginia's general district courts "are courts of limited jurisdiction and may exercise only such subject matter jurisdiction as has been expressly conferred by statute." *Parrish*, 292 Va. at 49; *see also* Va. Const. art. VI, § 8; Code § 16.1-69.7. Likewise, "when exercising its appellate jurisdiction in a de novo appeal, the circuit court's subject matter jurisdiction is derivative of the court not of record from which that appeal is taken." *Parrish*, 292 Va. at 49.[16] This means that "the circuit court has no more subject matter jurisdiction than the general district court had in that court's original proceeding." *Id.* Thus, "the scope of the general district court's subject matter jurisdiction is the dispositive issue" in the case at hand. *Id.*

It is well-established that the General Assembly has "confer[red] upon general district courts subject matter jurisdiction to try actions for unlawful detainer" under Code § 8.01-126. *Id.* at 50; *see also* Code § 8.01-126(B) (granting jurisdiction over "any case when possession of any house, land or tenement is unlawfully detained by the person in possession thereof"). That express authority, however, extends only to matters of possession, not title. Indeed, the Supreme Court has consistently held "that courts not of record have no subject matter jurisdiction to try title to real property." *Parrish*, 292 Va. at 50. Despite amending Code § 8.01-126 "several times," the General Assembly has yet to expressly grant such jurisdiction over issues of title to

---

[16] "[C]ircuit courts have original jurisdiction over unlawful detainer actions under Code § 8.01-124 in addition to appellate jurisdiction over such actions filed originally in general district court . . . ." *Parrish*, 292 Va. at 49 n.1. Such "grant of original subject matter jurisdiction[, however,] is not invoked in an appeal from an unlawful detainer proceeding originally filed in a general district court." *Id.* "We have previously held that although de novo, an appeal in the circuit court is a continuation of the original case." *Id.* at 54.

- 8 -

the general district courts; "[i]ts silence therefore evidences approval" of the existing jurisdictional restrictions established by the courts. *Id.*[17]

"Whether the plaintiff has a right of possession will not always present a question of title" in unlawful detainer actions. *Id.* at 51. But where, as here, a plaintiff's "right of possession [was] acquired after the defendant's entry" onto the property, "the validity of his claimed right of possession cannot be severed from the validity of his claimed title, because his title is the only thing from which any right of possession appears." *Id.* at 51 & n.3; *see also Neal*, 79 Va. App. at 8 ("As the *Parrish* Court makes clear, in an unlawful detainer action brought following a foreclosure, the plaintiff's right of possession is wholly derivative of the title received at the foreclosure sale.").

Because Virginia maintains a clear distinction between trying possession and trying title, a general district court will lose its jurisdiction over an unlawful detainer action if a party's pleadings sufficiently raise a genuine dispute over title that is integral to determining possession.[18] In such situations "[w]here the right of possession depends solely upon a claim of title," the court trying the unlawful detainer action "must weigh the parties' competing arguments about validity to determine whether a plaintiff's prima facie right of possession . . . has been rebutted by the defendant." *Parrish*, 292 Va. at 51 n.2. Only if sufficiently proven will "a defendant's affirmative defense that the deed is invalid . . . defeat[] the plaintiff's asserted

---

[17] "We presume that the legislature is aware of its own statutes conferring subject matter jurisdiction upon courts not of record and our precedents interpreting them." *Parrish*, 292 Va. at 50.

[18] *Compare Warwick & Barksdale v. Mayo*, 56 Va. (15 Gratt.) 528, 540-42 (1860) (recognizing that "justices of the peace . . . have [n]ever been empowered by any statute to try . . . titles to land," but must instead "dismiss [the] summons immediately" when "convinced that the case involves a bona fide claim of title"), *with Harrison v. Manson*, 95 Va. 593, 596 (1898) (recognizing that, because only a right of possession was implicated in an unlawful detainer action, the unlawful detainer claim would not resolve the validity of a recorded deed).

right of possession" and divest the general district court of jurisdiction over the entire case. *Neal*, 79 Va. App. at 8.

<u>Appellants' Allegations of Invalid Title were Insufficient to Divest the GDC of Jurisdiction</u>

As discussed above, "[i]f the general district court satisfies itself that the [defendant's] allegations [of invalid title] are insufficient, it retains subject matter jurisdiction and may adjudicate the [unlawful detainer] case on the merits." *Parrish*, 292 Va. at 53. Conversely, "if the court determines that the allegations are sufficient, it lacks subject matter jurisdiction over the case and it must be dismissed without prejudice." *Id*; *see also Warwick & Barksdale v. Mayo*, 56 Va. (15 Gratt.) 528, 542 (1860) ("[O]n being convinced that the case involves a bona fide claim of title to real estate," a court not of record "is bound to dismiss [the case] immediately.")[19]

Not "any naked allegation" of invalidity, however, "will put the deed in doubt, thereby divesting the general district court of jurisdiction. The question of title raised by the homeowner's allegations must be legitimate." *Parrish*, 292 Va. at 52. Here, TPR filed its unlawful detainer action in the GDC rather than the circuit court. Therefore, the GDC's jurisdiction—and that of the circuit court in exercising its de novo appellate jurisdiction—was limited to trying possession only. Because either court could only have properly exercised jurisdiction if no genuine material dispute of title existed, this Court must first assess whether appellants' claim of fraud against FRP's title was sufficiently pled in the GDC.

Appellants asserted in their "Grounds of Defense and Affirmative Defenses," filed in the GDC, that TPR's title was invalid because the deed delivered by FRP (the grantor) was itself a product of fraud. *See Hannah v. Commonwealth*, 303 Va. 106, 119-20 (2024) (recognizing that a

_____

[19] Such dismissal must be without prejudice to ensure that the plaintiff may still seek relief by filing the unlawful detainer action in circuit court where title may be properly tried under the circuit court's original jurisdiction. *Parrish*, 292 Va. at 52-53.

- 10 -

judgment "procured by fraud" may be rendered void ab initio (quoting *Watson v. Commonwealth*, 297 Va. 347, 350 (2019))).[20] Defendants who raise a claim of fraud to invalidate a plaintiff's deed in an unlawful detainer action in the general district court must do so with sufficient specificity such that their allegations would "survive a demurrer had the homeowner filed a complaint in circuit court." *Parrish*, 292 Va. at 52. Consistent with that approach, allegations of fraud are generally held to a higher pleading standard than other types of claims. *See Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385 (1997) ("Generalized, nonspecific allegations . . . are insufficient to state a valid claim of fraud."); *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858 (1978) (requiring that allegations of fraud not be "too vague, indefinite, [or] conclusory").

If fraud is not sufficiently pled, no material dispute over title exists and the general district court may properly try the issue of possession in the unlawful detainer action. *Parrish*, 292 Va. at 53. In this case, appellant's unfounded assertions of fraud are insufficient to raise a genuine material dispute over FRP's title to the Property. Appellants exclusively argued below, and now on appeal, that (1) FRP was not entitled to the deed because no entity named "Jayne A. Foster-Fair for FRP, LLC," was ever registered with the SCC, and (2) Special Commissioner

---

[20] "Although a court will generally not rescind a completed foreclosure sale, our Supreme Court has noted that a 'foreclosure sale may be set aside in cases "involving fraud."'" *Neal*, 79 Va. App. at 9 (quoting *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 468 (2020)). In *Parrish*, the Supreme Court held that "a trustee's deed could be set aside in 'cases involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court.'" 292 Va. at 52 (quoting *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 324 n.* (2015) (per curiam)). *Compare* Code § 8.01-113 (providing that "the title of the purchaser at such [judicial] sale shall not be disturbed unless within twelve months from such confirmation the sale is set aside by the trial court or an appeal is taken to the Court of Appeals . . . and a decree is therein afterwards entered requiring such sale to be set aside"), *with Hannah*, 303 Va. at 120 ("Objections to void ab initio judgments may be raised by any party in the case at any point during a valid direct or collateral proceeding where the voidness of the order is properly at issue, including by a court for the first time on appeal." (citing *Bonanno v. Quinn*, 299 Va. 722, 736-37 (2021))).

Knapp "falsely represented that he had 'collected' . . . the [full] purchase price for the real estate" from FRP before "conveying title to the Property to 'Jayne A. Foster-Fair for FRP, LLC, a Virginia limited liability company.'" The record contains no evidence supporting or substantiating either allegation.[21]

To the contrary, the evidence presented by TPR demonstrates that Jayne A. Foster-Fair purchased the Property at public auction *on behalf of* "FRP, LLC," for which she was a managing member. The certificates of fact introduced by TPR show that FRP was a duly registered fictitious name for "Future Retirement Plan, LLC," which had existed as a limited liability company managed by Jayne A. Foster-Fair in Virginia since March 18, 2011.[22] This Court finds no reasonable ambiguity in the record as to the identity of FRP. Nor does this Court find any support for appellants' accusations against Special Commissioner Knapp, which are directly contradicted by explicit reference to Knapp's receipt of the full purchase price for the Property in both the special commissioner's deed conveying the Property to FRP and the final decree issued by the Richmond Circuit Court confirming the details of the sale.

Essentially, by contesting the validity of FRP's deed, appellants merely sought to relitigate the same issues already decided by the Richmond Circuit Court, which have since been

---

[21] This Court notes that appellants recite the facts on brief, including those related to the Richmond-based litigation, in the light most favorable to themselves. They also cite facts drawn solely from documents the circuit court refused to admit into evidence below. Additionally, appellants reference two "addendums" attached to their brief that contain "Certificates of Fact" from the SCC, which were never presented below. At oral argument, Mr. Reinhardt even conceded that "the Certificates of Fact that were provided by former counsel do not accurately reflect the FRP LLC in this case, they just don't." He nevertheless asked this Court to take judicial notice of an additional certificate of fact he provided from the SCC, stating "that Jane A. Foster-Fair for FRP LLC is not the name of any limited liability [company] having ever existed."

[22] According to Code § 13.1-1050.4(C), the controlling authority discussed in *Agnew*, 80 Va. App. at 626-29, FRP's temporary lapse in registration between June 2018 and April 2021 does not invalidate the purchase of the Property in March 2021 because FRP was subsequently fully reinstated, as evidenced by the documents submitted by TPR in the unlawful detainer action.

affirmed by this Court's opinion in *Agnew*, 80 Va. App. 612. The circuit court, therefore, did not err in refusing to adjudicate appellants' claims relating to the validity of FRP's title. And because appellants raised no other arguments in opposition to TPR's stated right of possession, the circuit court did not err in resolving the unlawful detainer claim on evidence of TPR's possessory rights.

<u>The Evidence Presented Below Established TPR's Exclusive Right to Possession</u>

As established above, appellants' insufficiently pled allegations of fraud did not divest the GDC of its limited jurisdiction to determine which party was entitled to possession of the Property. Consequently, the circuit court correctly acknowledged that, in its appellate capacity, it was jurisdictionally barred from trying title as requested by appellants. This Court finds no error in that conclusion where appellants' allegations were insufficient to establish the affirmative defense of invalid title.

Next, after considering the parties' admissible evidence, both the GDC and circuit court, in their respective proceedings, found that TPR had established a prima facie case of its right to possession. That judgment is supported by the evidence and remains undisturbed by appellants' wholly unsupported arguments contesting title. *See, e.g.*, *Viney v. Commonwealth*, 269 Va. 296, 299 (2005) ("The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'").[23]

---

[23] This Court notes that it also lacks jurisdiction to rule on the merits of appellants' claims regarding title. Our jurisdiction on appeal is limited to that of the circuit court and, by extension, the GDC. In *Neal*, this Court expressly noted "that the circuit court could *not* set aside the deed in *this* [unlawful detainer] proceeding" in spite of appellant's sufficient pleadings as to "the elements of constructive fraud, which, if proven, could be sufficient to satisfy a court to rescind the foreclosure sale [at issue]." 79 Va. App. at 10 & n.1. Because of the jurisdictional restrictions discussed in *Parrish*, this Court reiterated that "[t]he reach of the circuit court's ruling would be limited to determining whether the VA proved that they had a superior right of *possession*, with no preclusive effect on future litigation." *Id.* at 10 n.1 (emphasis added).

In both the GDC and the circuit court, TPR established its right of possession by presenting documents of sale which traced the transfers of title to the Property since the public auction in March 2021. Specifically, TPR introduced copies of the two recorded deeds showing conveyance of the Property first from Special Commissioner Knapp to FRP and then from FRP to TPR. Appellants acknowledge that both deeds were properly recorded. TPR further provided a copy of the Richmond Circuit Court's final decree in Record No. 1724-22-2, which confirmed the judicial sale of the Property to FRP and rejected appellants' objections to the validity of that deed on the same grounds subsequently raised in the unlawful detainer action. That final decree expressly stated that FRP was entitled to the "exclusive right of possession" based upon its "ownership of the [P]roperty" after having made full payment of the purchase price to Special Commissioner Knapp.

During the circuit court's appellate proceedings, TPR presented additional evidence in support of its possessory claim, including documents from the SCC attesting to the continuous existence of FRP and testimony from a real estate expert attesting to the public accessibility and reliability of TPR's recorded documentary evidence. Because it properly limited its ruling to matters of possession only, the circuit court did not err in considering for that purpose TPR's evidence demonstrating the valid transfer of title to FRP, as confirmed by the Richmond Circuit Court. *See Pannill v. Coles*, 81 Va. 380, 383-84 (1886) (recognizing that evidence of complete title may serve as evidence of a possessory right in an unlawful detainer action).[24] The circuit court's assignment of significant weight to that evidence in support of TPR's claimed right to possession will not be second-guessed by this Court on appeal.

---

[24] The circuit court even expressly acknowledged that it did not have jurisdiction to question the validity of the Richmond Circuit Court's judgment regarding FRP's title.

By failing to establish a genuine material dispute of title in the GDC, appellants' insufficient allegations of fraud had no proper place in TPR's action for unlawful detainer. The same remains true on appeal in both the circuit court and this Court. Thus, this Court finds that the circuit court did not err in disregarding appellants' unsupported accusations of fraud when determining whether TPR established its right to possess the Property against appellants. Furthermore, based on the uncontradicted evidence of possession presented by TPR, this Court finds no error in the circuit court's decision granting TPR's motion for summary judgment.[25]

## CONCLUSION

Pursuant to the Supreme Court's holding in *Parrish v. Fannie Mae*, this Court finds that the circuit court did not err in granting summary judgment in favor of TPR where the evidence established TPR's right to possession and appellants did not raise a material dispute regarding title. The circuit court, deriving its jurisdiction from that of the GDC, correctly ruled only on the matter of possession, not title. Accordingly, this Court affirms the circuit court's judgment granting immediate possession of the Property and holdover rent to TPR.

*Affirmed*.

---

[25] As a final note, TPR requests sanctions pursuant to Code § 8.01-271.1. The sole reference to that request is found in the last sentence of the last page of TPR's brief as part of its prayer for relief. Nowhere in the record does it appear, nor is it argued by TPR, that sanctions were expressly requested or considered below in the circuit court. Rather, TPR raises the question of sanctions for the first time on appeal and bases its request on appellants' alleged violation of collateral estoppel principles. As discussed *supra* n.14, res judicata/collateral estoppel is inapplicable in the case at hand. Thus, TPR's stated reason for sanctions are without legal basis even if it were a matter that this Court could consider sua sponte on appeal. *See* Rule 5A:18.